NELSON STILLMAN, SAMUEL McLEAN and JAMES ROOD, Appellants, *v.* ALEXANDER YOUNG *et ux.*, FRANCOIS MARCHILDON *et ux.*, who sues by Alexander Young, her next friend, Appellees.

APPEAL FROM JO DAVIESS.

All real estate, by statute, may be sold for the payment of the debts of intestates, but administrators have no power to sell or incumber, without an order of court. The lands descend to the heirs, *sub modo*, subject to this liability. A creditor cannot, by an allowance of his claim, or by judgment against an estate or an administrator, acquire any specific lien, nor enforce their collection by levying an execution upon land.

Demands not prosecuted, or of which the administrator has not been notified within two years after the issuing of letters, are barred as to assets arising from the estate inventoried.

The failure of an administrator to plead the limitation of two years, will not preclude the heirs from pleading it on settlement with the administrator.

A person who is at the same time administrator and guardian, is not allowed to apply the funds of one capacity to the interests of the other.

A claim for permanent improvements, made under an adverse claim of title, derived from a sale under judgment, must go with the disposition made of that title, and fall with it.

THE decree in this case was entered by SHELDON, Judge, at May term, 1853, of the Jo Daviess Circuit Court.

This cause was heard at June term, 1854, of the Supreme Court, and the decision was entered as of June term, 1855.

The bill and proceedings show that Nehemiah Bates died in Galena, Jo Daviess county, on the 12th May, 1835, leaving two daughters, Elizabeth and Juliana, both minors, one born 6th of March, 1829, and the other, 2nd of May, 1831.

Bates, at the time of his death, owned several thousand dollars' worth of personal property, and considerable real estate. He also had a pre-emption right to lot (11) in the town of Galena, upon which there was standing a large and valuable store or warehouse, under the acts of Congress of 1836 and 1839, relative to pre-emption rights in Galena aforesaid.

The said lot was entered and purchased in the names of Elizabeth and Juliana, on the 21st of March, 1837.

On the 25th of May, 1835, letters of administration on the estate of Bates, were duly issued to his widow, Archange Bates, and James McDonald, and afterwards, an inventory of the real and personal estate was filed in the office of the probate justice, as early as the spring of 1836, including lot No. (11) aforesaid.

On the 3rd of October, 1835, Archange Bates and James McDonald having resigned, or their letters of administration having been revoked, Robert B. McDowell was appointed administrator of the said estate, *de bonis*, and on the 22nd of March, 1836, he was also appointed guardian of the said Elizabeth and Juliana, and continued to act as such guardian until the 23rd day of May, 1840, when he resigned.

On the 3rd of November, 1838, Robert B. McDowell, professing to act in the character of administrator and guardian, with his wife, *Archange*, who had been the widow of Bates, leased lot (11) to Samuel McLean and Nelson Stillman, for three years from the 1st of April, 1839, at a yearly rent of $900, payable quarterly at the end of each quarter, conditioned that the lessees might surrender the premises at the end of the first or second year, on giving three months' previous notice, and that they might make all needful and necessary repairs on the premises, and the same should be deducted from the rent.

No new contract in relation to the premises having been made, McLean and Stillman entered under the lease, and occupied the premises until the 21st of September, 1840, when they dissolved partnership, and Stillman occupied alone, till April 1, 1843, at which time, Stillman and James Rood formed a partnership, and they continued to occupy the premises until the 1st of April, 1848.

About the 16th of March, 1838, McDowell, administrator *de bonis non*, of the estate of Bates, made a settlement with A. G. S. Wight, administrator *de bonis non*, of the estate of Francis Bouthellin, and gave to said Wight, as such administrator, his notes, one for the sum of $440, and the other for about the sum of $450, being an alleged ascertained balance due, on settlement then made between McDowell and Wight, as administrators of the respective estates of their intestates.

On the 17th of August, 1838, Wight, as administrator of

Bouthellin's estate, recovered a judgment by default, against McDowell, administrator as aforesaid, for $444.05, with an order for execution against the estate of Bates, (if any,) otherwise against the property of McDowell. Execution issued on this judgment on the 29th of August, 1838, and on the 14th of January, 1839, the lot was sold on said execution to Frederic Stahl, (or rather stricken off in his name without his knowledge,) for the amount of the judgment and costs, $472.90, and a certificate of purchase executed to him, which, on the 19th of November, 1839, he assigned to McLean and Stillman.

On the 4th of February, 1841, Alexander Young, then sheriff of Jo Daviess county, executed a deed for the premises sold (lot 11,) aforesaid to *Stahl*, who, on the 3rd of May thereafter, conveyed the same to McLean and Stillman.

At May term, 1839, Jo Daviess Circuit Court, *Wight*, as administrator, etc., recovered another judgment on the other note against McDowell, by default, for $463.98, with a like order for execution as on the former judgment.

Execution issued, June 28th, 1839, levied on lot (11) aforesaid, which was sold to Wight on the 4th of September, 1839, for $501.13, and certificate of purchase issued to him on the 25th of the same month; and on the 15th of February, 1841, Young, as sheriff, made a deed under this certificate to Wight. Wight conveyed the same premises to McLean and Stillman, on the 15th of February, 1840.

Wight issued the execution, sold the property and purchased it in at the request of McLean and Stillman, or one of them, they agreeing to save him harmless in the premises, and paid him the purchase money on both sales.

Stahl was not present when the lot was sold and struck off to him, and did not know of it till the next day, when he was informed of it by McLean, who was his father-in law. Both purchases were made for the benefit of, and in fact, by, McLean and Stillman, under agreements and understandings that they were to pay the judgments and take the title. The last judgment was reversed in the Supreme Court, at December term, A. D. 1843, and no further proceedings have ever since been had in the premises. The suit is remanded to the Circuit Court of Jo Daviess county.

Before the sale of the lot on either of these executions, on the 9th of November, 1838, McDowell made and signed the following contract:

"WHEREAS, I have leased certain premises in the town of Galena, Jo Daviess county, Illinois, to Samuel McLean and McLean and Stillman, and there are certain liens and judgments supposed to be binding the premises so leased, now in case the said Samuel McLean and McLean and Stillman shall find it necessary, in order

Stillman et al. *v.* Young et al.

to keep and retain the said premises, or any part thereof, to pay any money to discharge the said liens or judgments, or either, then all such money so paid, I hereby agree to deduct and allow upon the rent, as payments thereof, of the premises so leased as aforesaid. Witness my hand and seal this ninth day of November, A. D. 1838.  R. B. McDOWELL, [SEAL.]
Administrator, &c. of N. Bates."

Neither of the claims upon which these judgments were rendered, were ever presented to either of the administrators of Bates, nor filed as claims, in any manner, against his estate, and more than two years had elapsed before the claim was ever known to Wight, the administrator, *de bonis non*, of Bouthellin, after the granting of letters of administration upon the estate of Bates. The first intimation Wight had upon the subject, was about the time he made the settlement with McDowell, on the 16th of March, 1838.

On the 23rd day of May, 1840, McDowell resigned his appointment as administrator and guardian of the estate and minor heirs of the said Bates, and *Thomas Drum* was, on the same day, appointed in his stead. During the time Drum was guardian, he told several persons that he procured himself to be appointed, for the purpose of securing a debt which the estate of Bates owed him.

At the October term, A. D. 1841, Drum, as guardian, commenced an action of ejectment against Stillman, to recover possession of lot (11) before mentioned, which was tried at October term, 1842. Stillman defended under his lease of 3rd of November, 1838, and plaintiffs suffered a non-suit.

On the 12th of June, 1843, Drum commenced another action of ejectment to recover the possession of said premises, and on the 5th of July, 1843, said Drum and Stillman, with the approbation of the probate court, made a contract in writing, in substance, that Drum, as guardian of Elizabeth and Juliana Bates, had settled with Nelson Stillman concerning all suits, demands, actions, and causes of action in law or equity, or which may result from the existing state of things, from any and all contracts, liabilities, doings or omissions of and concerning lot No. (11), and the judgments and executions upon which said property was sold, and under which sale said Stillman had claimed title to the property, and that in consideration, Stillman and wife had executed to Elizabeth and Juliana Bates a quit claim deed of lot (11), and of improvements made on the premises, and of the purchase money paid under the sale on said executions, and other moneys laid out and expended on said property, to the amount of $3,500, by Stillman, and of the final adjustment of conflicting titles to said property between the

21

parties, and of the covenants and agreements hereinafter reserved and contained.

Drum, as guardian, leases and demises to Stillman lot (11) aforesaid, with the privileges, etc., from the date, *until 6th of March*, 1847, when Elizabeth would arrive at the age of 18 years, and the undivided half to the 2nd of May, 1849, when Juliana would arrive at the age of 18 years.

Stillman covenants to surrender the possession at the expiration of the lease.

This contract was acknowledged before, and approved by, the probate justice of Jo Daviess county, who, at a special session of his court, then held, entered the following order:

"At a special session of the Probate Court, held in and for the county of Jo Daviess, at my office in Galena, this 5th day of July, A. D. 1843, present, Charles G. Thomas, probate justice of the peace, the following proceedings were had, to wit:

Thomas Drum, guardian of Elizabeth and Juliana Bates, and Nelson Stillman, came into court to make a settlement in reference to matters in dispute, concerning lot No. (11) on Main street, Galena, and after hearing all the matters and things in controversy between the said Drum, as guardian, and the said Stillman, the court approved of the agreement entered into."

It does not appear, from the evidence, that any accounts were presented and settled by the parties, before the probate justice, or that any calculation was made of any balance due or claimed on either side, but it appears to have been a lumping settlement, and lease, the principal consideration for which, moving from Stillman, was the payment of the judgments and executions before mentioned, and Stillman's claim of title to the premises under the purchases aforesaid.

No *petition* was presented to the probate court for leave to make said lease or contract, and no bond given by the guardian as required by law, nor is it shown in any part of the record or proceedings, that the interest of the estate required the lease of said premises, under the contract aforesaid. It is not shown that any witnesses were examined, nor facts inquired into. The testimony fairly leaves the presumption that there was no such investigation.

The defendants, with their answers, filed an account,

| | |
|---|---:|
| claiming to have paid to McDowell and Drum, on account of rent, in money, improvements, etc., on account of lot (11), | $2,517 16 |
| On account of dwelling-house, | 683 22 |
| Private debts of McDowell, | 449 05 |
| Amounting to | $3,649 43 |

Prior to July 5th, 1843.

The rent of the warehouse lot (11), for the 3 years
   under the lease, would be   -  -  -  -  $2,700 00
After that time, to the 5th of July, 1843, at $600,   758 33

                                             $3,458 33
For dwelling, as per leases, rent to expiration of the
   lease,   -  -  -  -  -  -  -  -  1,645 00

                                             $5,103 33

In the estimates of the charges against the warehouse
   lot (11), are the judgments before mentioned, on
   which the lot was sold,   -  -  -  -  $1,008 18
Making a new cellar under the warehouse, -  -  501 60

                                           $1,509 78

which, if not properly chargeable in the account, being deduct-
ed, will leave only $1,007.38 claimed by defendants to have
been paid on account of warehouse and lot (11) aforesaid,
which, being deducted from the rent aforesaid, of $3,458.83,
will leave $2,451.65, counting no interest, due complainants
for rent on the 5th of July, 1843.

It is proved by the testimony of McDowell, that in 1840 or
1841, he saw some one digging a cellar under the store on lot
(11); that he went to Drum, who was then guardian, and they
together went to Stillman and forbid his making the cellar,
when Stillman replied that he had bought the lot, and consid-
ered it his own, and went on and built the cellar.

After McDowell and wife were made parties to the bill, on
the 15th June, 1852, there was a demurrer filed to the supple-
mental bill by defendants' solicitors. This was stricken from
the files, because the solicitors had no authority to appear for
the said defendants. Bill taken as confessed against them.

On the 8th of December, 1852, defendants asked leave to file
a supplemental answer, showing the necessity of making the
representatives of Drum, parties to the bill. The motion was
denied.

The Circuit Court decreed,

1. That the lease of lot made 5th of July, 1843, being made
under the direction of a court of competent jurisdiction, was so
far valid.

2. That the release of past rent was for a grossly inade-
quate consideration, manifestly against the interests of the
wards, and should be set aside, and that Elizabeth and Juliana
were entitled to the rents from McLean and Stillman to the
expiration of the lease, reasonable rent from that time, from
Stillman, till April 1, 1843, and from Stillman and Rood from

Stillman et al. *v.* Young et al.

1st of April to 5th of July, 1843, leaving it to Stillman to elect, if he desired to have the whole contract, and his deed to Elizabeth and Juliana Bates set aside and canceled.

A reference was made to a master to state on account, under the following rules:

1. Charge rent and interest on quarter yearly payments, under the lease of November 3, 1838.

2. Charge Stillman reasonable rent after expiration of the lease, till 1st of April, 1843.

3. Charge Stillman and Rood reasonable rent from the 1st of April, 1843, to 5th of July, 1843.

Allowing all proper payments and necessary repairs to July 5th, 1843, also all taxes and other necessary expenditures by Stillman & McLean, Stillman, and Stillman and Rood.

Repairs on warehouse, digging cellar, building cellar wall, labor and materials, considered needful and proper repairs.

Items of account, $150.56, $151.19, $151.07, of November 20th, 1838, $21.37 of 29th November, 1838, $14.25 of March 8th, 1839, rejected, being McDowell's private debts.

Miller & Fuller's note for $361.91, for rent on dwelling-house and warehouse, allowed proportionately on each, $260.71 on this account.

Stillman to elect by Thursday, whether the whole agreement with Drum shall be set aside.

If so, then the master shall charge Stillman & Rood with reasonable rent from 5th of July, 1843, until their occupancy ceased, deducting all beneficial and lasting improvements.

That the depositions and exhibits should be read in taking the account.

Both parties excepted. The reference to the master was withdrawn, and on the 12th of May, 1843, Stillman not electing to have the agreement of 5th of July, 1843, canceled, a final decree was entered.

That there is due from McLean & Stillman, under the lease of November 3rd, 1838, - - - $2,487 61
From Nelson Stillman, for reasonable rent from 1st of April, 1842, to 1st of April, 1843, - - - 570 13
From Stillman & Rood, from 1st of April, 1843, to 5th of July, 1843, - - - - - 125 55

$6,183 29

Decree below was for the payment of the same and costs, and interest from the date of the decree.

Higgins and Strother, for Appellants.

N. H. Purple, for Appellees.

SCATES, J. In 1835, Nehemiah Bates died, possessed of a pre-emption to lots 10 and 11 in Galena, and other real estate, all improved, leaving Archange, his wife, and Elizabeth and Juliana, infants.

On the 25th of May, 1835, letters of administration issued to Archange and J. B. McDowell, who afterwards intermarried, and the letters of administration were revoked, and on the 3rd of October, 1835, letters issued to J. B. McDowell alone. In 1837, McDowell was appointed guardian for the two infant children, and acted until 1840, when he resigned, and Thomas Drum was appointed, and acted. The administrator filed inventories of the personalty, and of lots 10 and other realty, and at the April term of the circuit court, 1836, obtained an order to sell lot 10, which was afterwards sold, and the proceeds applied as assets.

The pre-emption was proven before the commissioners, under the acts of Congress of 5th of February, 1829, and 2nd of July, 1836, and a certificate issued by commissioners, to Elizabeth and Juliana Bates, on 21st of March, 1837, in their own names.

On the 3rd of November, 1838, McDowell as administrator and guardian, and Archange, his wife, executed a lease of lot 11, with warehouse thereon, to N. Stillman & Company, (composed of himself and McLean,) for three years, from the 1st of April, 1839, at $900 per annum. They entered, and held during the lease, and from the end, 3rd of April, 1842, to 5th of July, 1843, Stillman, and Stillman & Rood held over. On the 5th of July, Stillman took a new lease from Drum, as guardian, on the whole lot, until the 6th of March, 1847, when Elizabeth arrived at majority, and on half the lot until the 2nd of May, 1849, when Juliana attained her majority. Under this lease, Stillman & Rood occupied until its expiration.

This lease was made with the sanction and approval of the judge of probate, and the considerations paid by Stillman, are expressed to be a quit claim deed to the lot 11, from Stillman and wife to the minors, made on settlement of all suits, demands, actions, and causes of action in law and equity, from the existing state of things, for all contracts, liabilities, doings or omissions, concerning this lot, and certain judgments and executions upon which the lot was sold, and under which, Stillman claimed title, together with moneys laid out and expended on said property, by Stillman, to the amount of $3,500. The quit claim was executed accordingly.

To explain this transaction, the following statement is admitted.

A. G. S. Wight, as administrator of Bouthellin, had a demand

against the estate of N. Bates, but had neglected to present and prove it until some time in 1838, when McDowell, as administrator of Bates, allowed the demand, and gave his two promissory notes for it.

Wight recovered judgment upon one of these notes against McDowell, in 1838, for $451.55, issued execution thereon the 29th of August, 1838, levied on this lot 11th of September, and sold it the 14th of January, 1839. In May, 1839, he recovered judgment for $463.98 on the other note, on the 28th of June execution issued, was levied on same lot, and on the 4th of September, 1839, it was sold. Both were purchased by procurement of Stillman & McLean, and conveyances made to them. This last judgment was reversed by supreme court at December term, 1843, after the conveyances to Stillman & Co.

These constituted the title, and claims, etc., mentioned as the consideration in the lease of 5th of July, 1843.

The wards have intermarried with Young and Marchildon, who file this bill, setting up the statute of limitations against the demand of Wight, administrator of Bouthellin, and praying an account of the rents.

The plaintiffs here, answered the bill, admitting the above statement of facts, and insist upon the lease as a settlement, and also upon a large outlay for repairs and improvements.

The court found a balance of rents due under the first lease, from Stillman & McLean, of $2,487.61, from Stillman alone, for his occupancy between the.two leases, of $570.13, from the 1st of April, 1842, to the 1st of April, 1843, and from Stillman & Rood, $125.55, for their occupation from 1st of April, 1843, to 5th of July, 1843, when the second lease was made ; and for these respective sums a final decree was entered, with interest from date of decree until paid.

This is assigned for error, with other causes.

I may remark that the reversal of one of the judgments in the supreme court, would not affect a fair *bona fide* purchaser, without notice, if the lot were bound by that judgment as a lien, and subject to sale for its satisfaction, by execution upon it. But it was neither. All real estate, by statute, may be sold for the payment of the debts of intestates ; Rev. Stat. 1845, p. 558, sections 103, 104 ; but administrators have no power to sell or incumber, without an order of court. The lands descend, in the mean time, to the heirs at law, *sub modo*, subject to this liability, and in this particular manner, to be divested for this object.

Though the lands descend, subject to the payment of the debts, no creditor, by obtaining an allowance of, or judgment

for, his claim, against an estate, or the administrator, thereby acquires any specific lien, as under the statute in relation to judgments and executions; Rev. Stat. 1845, p. 300, section 1; nor can they enforce their collection by levy of an execution upon the land. *Welch* v. *Wallace*, 3 Gil. R. 490; see also *Marshall* v. *Adams*, 11 Ill. R. 40.

Again, the statute of limitation, of two years after the issuing of letters of administration, absolutely bars and cuts off all demands not presented or notified within that time, from the assets arising from the estate inventoried. Rev. Stat. 1845, p. 561, section 115; *Thorn* v. *Watson, administrator*, 5 Gil. R. 30; *Judy, administrator*, v. *Kelley*, 11 Ill. R. 216; *The People* v. *White et al.*, 11 Ill. R. 349.

The failure of the administrator to plead this special statute of limitations, will not bar or preclude the heirs from pleading it on settlement with the administrator. See *Nowell* v. *Nowell*, 8 Maine R. 225.

These principles clearly cut off all pretense of title to this lot, derived under the judgments of Wight against McDowell, whether they were against him individually, or as administrator, nor can any equitable title be based upon their payment, or any purchase under them.

Again, another difficulty stands in the way of these arrangements of the proceeds of the rents by McDowell. As administrator he had nothing to do with the leasing of the realty, and collection and management of the rents ; as guardian, he had as little concern with the administration of the estate, and settlement of the debts. Nor can he be allowed, by blending the two characters, to throw the administration and management of the two estates into a kind of hotch-pot confusion, and thereby sustain a misapplication of the funds and interests of the one to the other.

This land descended to the heirs, subject to the payment of debts in the due, legal and proper course of administration. The fact that the heirs proved up their father's pre-emption, under the acts of Congress, even with the administrator's consent and assistance, can make no difference, I think, nor will the fact of their taking the certificate and making the entry in their own names. The transaction comes within the equity of the provisions of the statute of Wills, sections 111, 112 and 113, (Rev. Stat. 1845, p. 559, 560,) relative to lands bought of the United States on partial credit, and for which, special provision is made for securing the interest therein, of an intestate, and subjecting that interest to the same liability of intestate's other lands.

Under these principles the case must be decided upon the rights of the parties, as presented by the leases and occupancy, on the one hand, and the payment of rents, repairs and improvements, on the other.

In relation to the permanent improvements, the leases do not authorize any, and the testimony shows that they were forbidden. The claim for them, therefore, can have no foundation in the account of plaintiffs, as lessees, and if made upon the score of adverse claimants of title, under the judgments, they must go with the disposition made of that title.

As we understand the decree, the court did recognize, without so declaring expressly, the validity of the lease made by Drum, as guardian, on the 5th of July, 1843. If so, we cannot review it, as the case is brought here by Stillman & Co., who make no complaint as to this affirmance of it.

They may complain of its provisions being disregarded, in the construction contended for, that the account for previous rents, repairs, etc., were included in and settled by the lease.

The lease does not recite anything in relation to rents or repairs, but only in relation to conflicting title and improvements, for which two last, plaintiff Stillman executed a quit claim.

There is no well grounded pretext for including in this arrangement, under these recitals, the rents then due on former lease and occupancy.

The lease was made with the approval of the court of probate, but looks to be hard and unconscionable enough to the interests of the wards, without adding, by a liberal construction of its recitals, between two and three thousand dollars of their dues for past rents, to the use of the premises for five to seven years longer, all for the nominal consideration of a groundless title and unauthorized improvements.

I shall not adopt a construction which adds such grossness to the inadequacy of the consideration paid by Stillman. Excluding these accounts from all connection with the lease, it is not presented, by this assignment of error by plaintiffs, for our consideration.

In taking the account of the rents, the court has committed no error by allowing annually nine hundred dollars. That was the amount agreed on up to 1st of April, 1842, and the parties held over without a new agreement, until 5th of July, 1843, and without offering to deliver possession, according to the terms of the lease, or any notice of an expected reduction of rent.

This brings Stillman & McLean in debt, for the term of the first lease to 1st of April, 1842, in $2,700, with interest from the end of each quarter, the time it became due, until paid;

Stillman alone from the 1st of April, 1843, with interest from that date, on $662.50; and Stillman & Rood, to 5th of July, on $237.50, until paid. The plaintiffs should discharge themselves by proof of payments. Showing payments in the way of repairs, they have also shown improvements by building a cellar, etc., and many of the items are left unexplained, so that I am not able to determine from the record, whether the work and materials were for the repairs of the premises, or on the improvements. Other items, which might be proper charges, are not particularly known to the witnesses, to have been furnished. These cannot be admitted simply on the footing of forming part of an account, of which many items are proven. The account is not of that character of dealing that admits of this rule of testimony.

Testing the plaintiffs' accounts by rules of strict proof, they have not established enough to show any error in the conclusion to which the court arrived, as to balances due.

*Decree affirmed.*

TREAT, C. J., concurred in affirming the decree.