# W. Scott Marshall, Adm., v. Marietta E. Coleman and Nellie May Goodner.

1.   Administration of Estates—*Allowance of a Claim by the County Court—When Conclusive Between Administrator and Heir.*—The allowance of a claim by the County Court in matters of probate, is conclusive between the administrator and the heir, so far as the personal estate is concerned.

2.   Same—*Where the Judgment Against an Estate Can be Impeached.*—Where the judgment against an estate can be impeached for fraud or collusion in a court of equity, the allowance of the claim by the Probate Court is not conclusive against the heir, but must encounter all the equitable remedies of a court of chancery, and no act of the County Court in the exercise of its probate jurisdiction is exempt from impeachment for fraud, accident, mistake or collusion.

**Proceeding in Probate.**—Appeal from the Circuit Court of Marion County; the Hon. Truman E. Ames, Judge, presiding.   Heard in this court at the February term, 1899.   Affirmed in part, reversed in part, and remanded with directions.   Opinion filed March 16, 1900.

**Statement.**—This case originated in the County Court of Marion County, where appellees filed exceptions to the final report of appellant in the estate of which he was administrator, and it was taken from that court by appeal to the Circuit Court of the county, from which it comes here by appeal from the decree of that court, sustaining, in part, the exceptions allowed and sustained by the County Court; and besides the errors assigned by appellant, appellee Marietta E. Coleman has assigned a cross-error.

The deceased, Edward B. Goodner, died April 15, 1892, unmarried, without issue, and a minor.

The property which he left, he inherited from his grandfather, Dr. Edward B. Marshall, who had resided at Centralia, in this State, for many years prior to his death, and who died at that place April 17, 1890, intestate, leaving a large estate of real and personal property.   He left a widow, Harriet Marshall, and four sons, viz., appellant, James E. Marshall, Charles P. Marshall, and Xenophon S. Marshall, also two grandchildren, viz., Marietta E. Goodner (now

Coleman), and the deceased, Edward B. Goodner, as his sole heirs at law. The grandchildren were the children of Melvina, a daughter who had married one Dr. Lyman T. Goodner, and who died some years before her father.

After the death of Melvina, wife of Dr. Goodner, he married a Miss Helen L. Chapman, and the only issue of this marriage was appellee Nellie May Goodner, born August 2, 1878, and who arrived at her majority August 1, 1896.

Dr. Lyman T. Goodner died on or about March 20, 1880, leaving no estate. Soon after his death, the two children, Marietta E. and Edward B. Goodner, were taken to their grandfather Marshall's home to live, and Edward B. remained there until his death, in 1892, and Marietta remained a year later, and in 1893 went to Colorado to live, and married one Carlton M. Coleman.

Xenophon S. Marshall died in 1893, intestate, unmarried, and leaving no descendants. James E. Marshall became administrator of Edward B. Marshall's estate; but Xenophon Marshall's estate was never legally administered upon.

January 3, 1893, a claim was filed against the estate of Edward B. Goodner, deceased, in the name of Harriet E. Marshall, for the care and maintenance of deceased, from April 17, 1880, to April 17, 1890, at the rate of $3 per week, amounting to $1,560, and for his care and maintenance thereafter until February 2, 1892, at the rate of $4 per week, amounting to $366.85; the total amount of the two charges being $1,926.85.

The entire claim was allowed by the court and was afterward paid by appellant.

On the same date, Charles P. Marshall filed his claim against the estate for a medical bill of $298, commencing in 1886, and containing no credits, which was allowed and afterward paid.

At the July term, 1895, of the Probate Court, James E. Marshall, as administrator of the estate of Edward B. Marshall, deceased, filed a petition setting forth that from time to time he had made distribution to the widow and heirs of the deceased, and in so doing had by mistake and inad-

Marshall v. Coleman.

vertence paid to Marietta E. Coleman and to W. Scott Marshall, administrator of the estate of Edward B. Goodner, deceased, each the sum of $3,500 more than they were legally entitled to, out of the assets of the Edward B. Marshall estate.

That Marietta E. Coleman had refunded the amount distributed to her, but that W. Scott Marshall, as such administrator, refused to refund to petitioner the said $3,500 so paid to him, and petitioner prayed for an order of the court requiring appellant to make such payment out of the assets of the estate of which he was administrator. The court granted the order as prayed for, and appellant paid over the sum and took credit for it in his report.

The Circuit Court partially sustained the exceptions of appellees to appellant's final report, and decreed appellant to surcharge in his report the sum of $1,560 of the claim allowed and paid to Harriet E. Marshall, also $168 of the claim allowed and paid to Charles P. Marshall, also $1,750 of the $3,500 paid to James E. Marshall, administrator of the estate of Edward B. Marshall, deceased, on his petition, and $14.88 which appellant had charged in his report as traveling expenses, with ten per cent interest on each sum, after the expiration of six months from the time when, under the statute, appellant should have made his final report. And the court also decreed that Marietta E. Coleman had estopped herself from claiming the remaining $1,750 of the $3,500 paid to James E. Marshall, with interest, because of her written consent to the allowance of the claim.

W. F. BUNDY and J. A. WATTS, attorneys for appellant.

G. A. HOFF and ALONZO HOFF, attorneys for appellee Marietta E. Coleman.

CHAS. T. MOORE, attorney for appellee Nellie M. Goodner.

MR. JUSTICE BIGELOW delivered the opinion of the court.

The four items to which exceptions were sustained in whole or in part, must be treated separately.

The evidence shows that if the item of $1,560 of the Har-
riet E. Marshall claim was ever a valid claim of any one,
it was the property of the estate of Edward B. Marshall,
deceased, and the claim showed on its face that the most of
it was barred by the statute of limitations.    There is no evi-
dence that Edward B. Marshall ever intended to make any
charge for the board of the boy, or that he kept any account
of it in his books, and the clear inference from the facts
appearing in this record is, that he took both of the children
of his deceased daughter into his family to bring up with-
out any thought of receiving recompense, beyond their
services, while they remained with him, and this fact was
undoubtedly known to his widow and surviving sons.

Of the sons one, Charles P., was a physician, and the
other two were bankers and shrewd business men.   They
must have known that appellee Nellie May Goodner was a
legal heir to one-half the estate of Edward B. Goodner,
deceased.

Under such circumstances James E. Marshall went to his
mother's house, drew up the claim and swore his mother to
it about two months before an administrator of the dead
boy's estate was appointed.

When the claim was being made out, appellee Marietta E.
Coleman, nee Goodner, was present, and being surprised, as
she testified, asked, "Is grandma going to charge for board?"
To this her uncle James replied, ."Oh, no; this will be fig-
ured up and your grandmother will sign a receipt which
will be all right to make it look as though she received the
money.   It will be taken out of your mother's (brothers')
estate to protect your interest from this little half-sister."

Mrs. Coleman also testified that she asked appellant about
the board bills, and he informed her that they were for her
protection against her little half-sister, who was not entitled
to share in the estate of her dead brother.

It is clear that she did not understand what was being
done, and never consented to the allowance of the claim.
No evidence was introduced in either the County or
Circuit Court to sustain the claim.   It was made up

from nothing that was in writing, and was the product of James E. Marshall, who, we are satisfied, intended, with the help of appellee, which was afterward forthcoming, to deplete the estate of his dead nephew, by turning as much of it as possible back into the Marshall family, and this purpose will be more clearly seen from the claimed "advancement," hereinafter referred to. That the claim was conceived in fraud, and that appellant knew it and assisted in carrying out the scheme, the evidence leaves little doubt in our minds.

Under such circumstances, the pretended claim, although it has passed into a judgment, may be re-examined, and the judgment set aside by the County Court; since in all matters concerning the settlement of estates, that court may exercise equitable jurisdiction, in order to arrive at a just settlement. It may set aside, and wholly or partially disregard judgments allowing claims that are fraudulent or collusive, as against the rights of creditors or heirs, whether such judgments relate to the real or personal estate of the decedent. It may, upon a proper showing, at a subsequent term, set aside orders of a previous term, and in all things the practice and procedure is as full and flexible as that of a court of chancery, and any violated equitable right may be vindicated, even though a legal right has apparently been established by the court, by a prior proceeding.

The rule laid down by the Supreme Court in Stone v. Wood, 16 Ill. 177, and followed by Hopkins v. McCann, 19 Ill. 113, and many other cases, that the allowance of a claim by the County Court in matters of probate is conclusive between the administrator and the heir, so far as the personal estate is concerned, is strongly urged by counsel for appellant as conclusive of any right of attack by appellees, of the Harriet E. Marshall claim, but the entire class of cases relied upon, will, we think, be found upon examination, to have been of such a character that a court of chancery would have been powerless to have impeached their validity.

Where the judgment can be impeached for fraud or collu-

sion in a court of equity, the allowance of a claim by the Probate Court is not conclusive against the heir, but must encounter all of the equitable remedies of a court of chancery, that can be brought into play against it. In re estate of Corrington, 124 Ill. 363; Ward v. Durham et al., 134 Ill. 195; Shepard, Admr., v. Speer et al., 140 Ill. 238; Schlink v. Maxton, 153 Ill. 447; Kinnie v. Schumacher, 65 Ill. App. 342; Woerner's Administration, Secs. 143–146.

No act of a County Court, in the exercise of its probate jurisdiction, is exempt from impeachment for fraud, accident, mistake or collusion. Partial reports of administrators and approval thereof by the Probate Court are only *de bene esse*, and if not excepted to, are open to subsequent investigation and challenge, to the extent that a court of chancery will afford relief under similar circumstances. Bliss v. Seaman, 165 Ill. 422; Woerner's Administration, Sec. 504; Schouler's Executors and Administrators, Sec. 526.

As to the claim of Charles P. Marshall, the order of a surcharge of $168 of which is assigned for error, while it showed on its face that a part of it was barred by the statute of limitations, still it was for necessaries, which the evidence shows were furnished by the claimant, and it was regularly presented, allowed and passed into a judgment, and was paid by the administrator, and the question presented is, should appellant have been surcharged with that portion of the claim that appeared on its face to have been barred by limitation ? In support of the contention counsel for appellee cite Stillman v. Young, 16 Ill. 318; McCoy v. Morrow, 18 Ill. 519; Unknown heirs, etc., v. Baker, 23 Ill. 491; and Bromwell v. Schubert, Adm'r, 40 Ill. App. 330.

Without stopping to analyze the cases, we are unable to see their applicability to this case. True, the court says in some of them, that it was the " duty " of the administrator to have interposed the defense of the statute of limitations, but there may be a duty imposed upon an administrator or executor, the non-performance of which may render him liable to an action on his bond, but which would not be suf-

ficient to invalidate a judgment rendered by the court, in allowing the claim.

A more complete answer to the contention of counsel for appellees is, that there were no written pleadings concerning the claim filed, and there was no evidence that the general statute of limitations was not interposed to that portion of the claim which had been due over five years; hence the presumption must be that all the defenses that could have been made to the claim, and every part of it, were made and insisted upon, and that the allowance of the entire claim was the deliberate act and judgment of the Probate Court, unaffected by anything done by either the claimant or the administrator.

The fact that about one half of the claim, as it appeared on its face, was barred by the statute of limitations, was not sufficient of itself to show any part of it so tainted with fraud as to compel its rejection, and therefore the court erred in holding that appellant should be surcharged with $168 of the claim with interest.

The next assignment of error relates to the refund of $3,500 made by appellant to James E. Marshall, administrator of the estate of E. B. Marshall, deceased. The history of this claim according to the testimony of appellant is as follows: E. B. Marshall, deceased, and appellant, were partners in the banking business, at Centralia, in this State, and in that business they used a ledger that was opened in 1873, and which seems to have been discontinued in 1878. E. B. Marshall, in addition to the partnership accounts, carried some individual accounts in the ledger. Some time, "not earlier than 1873 or later than 1875," in a dispute between appellant and his father as to some office rent, appellant's father showed appellant an account on the ledger against Lyman T. Goodner and wife. The account was headed, "To advancement charged." E. B. Marshall footed it up and it amounted to $7,600. After the death of E. B. Marshall, his administrator made a search for the book and it could not be found. In 1892, it was found in a woodshed, with the leaf which contained this advancement torn out.

Appellant did not tear it out and did not know who did.
The index to the ledger, under the letter " G," was offered
in evidence by appellant, and it showed, " L. T. Goodner," and
the page was missing.   Whether an advancement had in
fact been made, the evidence fails to disclose, and there is
no evidence to show that the entry, " To advancement
charged," was written prior to or contemporaneously with
the entries in the ledger, nor was the book of original entries
from which, presumptively, the entries in the ledger were
posted, produced or accounted for.

From 1890 to 1893, Marietta E. Coleman resided with
her grandmother, Harriet E. Marshall.   In June, 1894, she
went to Colorado to live, on account of her health, and was
married to Carlton M. Coleman.   She testified that before
she went to Colorado, she had several conversations with her
uncle, James E. Marshall, and Scott Marshall, in which they
said they would fix up an advancement that would include
the rent for a house which her father had occupied at Nash-
ville, in this State, and in this way, the share " that her
brother had inherited to her and to her little half-sister,
would be smaller."   By deducting the advancement, the
amount left would be so small that Nellie May Goodner
would not go on contesting.   These conversations were
denied by her uncles.   In January, 1895, Mrs. Coleman
received the following paper at her home in Colorado, to
sign and return :

" STATE OF ILLINOIS, ⎱ ss.
    Marion County,   ⎰

We, the undersigned, and being the only surviving heirs
at law of Edward B. Marshall, deceased, late of the county
of  Marion  and State  of  Illinois (Edward  B. Goodner,
deceased, grandson of Edward B. Marshall, deceased, being
the only other heir at law of E. B. Marshall, deceased), do
by these  presents and of our own knowledge, recognize
and admit the advancement to Melvina B. Goodner, daugh-
ter of E. B. Marshall, deceased, and to her husband, Lyman
T. Goodner, as advancement to them, and that the same was
received by them during their lives, as advancement, and by
them so acknowledged and received, from year to year,
from May 1, 1866, up to October 1, 1878, amounting to the
sum of $7,000, which sum was as such advancement under-

Marshall v. Coleman.

stood and agreed, should be deducted from the distributive share of said Melvina Goodner, out of the estate of her father, E. B. Marshall, at his death, and in the distribution of his estate among his said children and grandchildren.

Signed and sealed by the said children and grandchildren, survivors of a deceased child, Melvina E. Goodner, deceased, this 14th day of January, A. D. 1895.

> CHARLES P. MARSHALL,
> W. SCOTT MARSHALL,
> JAMES E. MARSHALL,
> MARIETTA E. COLEMAN."

This paper was sent to her by James E. Marshall; it had been prepared by his attorney, Judge W. Stoker. When the paper came to Mrs. Coleman's hands, it was signed by the three Marshalls; she, noticing that her grandmother had not signed, wrote back to her uncle James for an explanation. No reply came, but on January 25, 1895, she received two letters, one from her uncle Charles and another from Judge Stoker, the attorney in the E. B. Marshall estate.

Judge Stoker wrote her that he had been informed "some time since," by one of her uncles, that she desired him to attend to her rights, if a suit were brought by her half-sister, and advised her to sign the advancement paper just quoted, and thinks her uncles will be honest with her in the matter. In the meantime, before the receipt of these two letters, she had signed the paper and sent it back. Her uncle Charles wrote her, "the absence of any member of the family inconveniences the transaction of our combined interest. When a document is signed by your three uncles, you ought to know that it means straight business, even though you don't understand the purpose at the time. If you receive a paper not signed by your grandma, it either does not concern her, or to save time, it may be signed by her on its return." The letter closes by urging her to appoint some one to look after her interests. In reply to this letter Mrs. Coleman wrote to her uncle Charles that it was kind in him to write her concerning the "document," and she appreciated the advice from her uncles, because she had faith in their ability to advise, and confidence in their interest in her, and asking forgiveness if she had offended

them.   She tells them in the same letter, that she has dele-
gated Judge Stoker to look after her matters, and closes by
saying that she hoped none of them would hesitate to
advise her in any matter of business, and she would come
home, if necessary.

On the 14th of February, 1895, she received a letter
from her uncle James, saying it was not necessary for her
to come to Illinois; when she was needed she would be
notified.

On April 30, 1895, her uncle Charles sent a letter to Mrs.
Coleman, saying:

"The heirs to the real estate of E. B. Marshall, deceased,
are contemplating a partition or division of the same.   Do
you wish to settle matters in a court of law, or would you
rather make an offer to sell your share for cash?   We will
entertain an offer of sale from you if made within fifteen
days."

On receipt of this letter, Mrs. Coleman came to Illinois;
went to see her uncles.   She testified that Charles referred
her to James, and James referred her to Charles.   She then
went to Chicago to see her uncle Scott Marshall, where the
matter of the advancement came up, and Scott Marshall
told her, if she did not permit the advancement to go
through, they would law her out of everything she received
and they would expose letters in court from her father,
that would be disgraceful to her.

Scott Marshall denies these conversations, but says on
the witness stand, he did have letters of Mrs. Coleman's
father that were "disgraceful."

Several meetings followed between Mrs. Coleman and her
three uncles and a consummation of the matters in dispute
between them was reached by Mrs. Coleman and her hus-
band executing three quit claim deeds to her uncles, for her
share in her grandfather's real estate, for the consideration
of $3,700 cash.   At the same time the following agreement
was drawn up, signed and executed:

"MEMORANDUM OF AGREEMENT, entered into this fifth day
of June, A. D. 1895, by, between and among Marietta E.
Coleman, of one part, and James E. Marshall, W. Scott

Marshall and Charles P. Marshall, as individuals, of the other part.

WITNESSETH:—Marietta E. Coleman, with her husband, Carlton M. Coleman, has sold and conveyed this day by three quit-claim deeds, bearing date of the fifth day of June, 1895, to James E. Marshall, W. Scott Marshall and Charles P. Marshall, all their interest in all the real estate of which the said Edward B. Marshall died seized. The consideration of the said conveyance is the sum of $3,700, the amount named in the deeds, and is this day paid in cash. And also a further consideration is this: In the lifetime of the said E. B. Marshall, an advancement was made by him of the sum of $7,000 to Melvina E. Goodner, since deceased, his daughter, and also the mother of the said Marietta E. Coleman and Edward B. Goodner, deceased. By inadvertence and mistake, the said James E. Marshall, as administrator of the estate of the said Edward B. Marshall, deceased, has, up to this date, paid to the said Marietta E. Coleman $3,500, it being an amount equal to one-half of the said advancement, and which she acknowledges she has no right to receive. This, she, the said Marietta E. Coleman, as a part of the consideration of the said conveyance, refunds and pays back in this manner: James E. Marshall, W. Scott Marshall and Charles P. Marshall, as individuals, pay $3,500 for her to the said James E. Marshall, as administrator of the estate of Edward B. Marshall, deceased. Further, the said James E. Marshall, as administrator of the estate of the said E. B. Marshall, deceased, by inadvertence and mistake has, up to this date, paid to W. Scott Marshall, administrator of the estate of the said Edward B. Goodner, deceased, the sum of $3,500, being an amount equal to the other half of the said advancement. Marietta E. Coleman agrees and consents that W. Scott Marshall, as such administrator, shall refund and pay back to the said James E. Marshall, as administrator of the estate of Edward B. Marshall, deceased, that amount.

It is also agreed as a further part of the consideration of the said conveyances, that if there should be any contest by any heir or pretended heir of either of the said estates about said advancement, and in such contest it should be decided by the court that there was not or that there never had been such an advancement (and the said Marietta E. Coleman in no way aids or assists the said contestant) then the said Marietta E. Coleman will make no claim for any share of the amount or any part of the amount thereof involved in such contest or growing out of the same, except

for the sum of $875, and she hereby expressly assigns the balance of such share or interest, if any should arise, to James E. Marshall, W. Scott Marshall and Charles P. Marshall, and hereby expressly authorizes any person or persons holding the said balance of such amount, after paying to Marietta E. Coleman the said sum of $875, to pay the same over to the said James E. Marshall, W. Scott Marshall and Charles P. Marshall in equal shares. But if no contest is or shall be made about any such advancement, by any such person, or if such contract, if made, should fail, then Marietta E. Coleman is to receive from the estate of Edward B. Marshall, deceased, the further additional sum of $1,750; however, if this sum of $1,750 shall be paid in the manner indicated, then and in that case the said sum of $87? would not be so paid her.

And if any part of such advancement should at any time, by the court, be ordered paid to any other person than the ones named, in any such contest as the one above mentioned, out of the real estate of any part thereof conveyed, instead of out of the personal property, then and in that event the said Marietta E. Coleman will pay to the said James E. Marshall, W. Scott Marshall and Charles P. Marshall, out of her share of the said advancement, an amount equal to the amount so taken out of the said real estate.

It is also agreed that the said James E. Marshall, W. Scott Marshall and Charles P. Marshall will save the said Marietta E. Coleman entirely harmless of and from any and all costs in the partition suit now supposed to be pending, and also of and from all costs which may accrue in any contest, if any should occur, over the said advancement.

Witness our hands the day and year first above written.

MARIETTA E. COLEMAN,<br>
CARLTON M. COLEMAN,<br>
JAMES E. MARSHALL,<br>
W. SCOTT MARSHALL,<br>
CHARLES P. MARSHALL."

(Signed in duplicate.)

In reference to the matter of the advancement, which it is claimed, by appellant, was by this agreement confirmed and ratified by Mrs. Coleman, appellant testified in the Circuit Court, as follows:

"Q. You say that account showed $7,600 and something? A. Yes, sir; that is what it footed up to.

Q. Is that what you had in mind when you fixed up

Marshall v. Coleman.

this advancement paper? A. Not especially; we had $10,000 in mind when we fixed that up.

Q. Explain to the court, when you went to Judge Stoker with the getting up of that paper, how you came to make the amount just $7,000. A. I didn't arrive at that sum at that time.

Q. When did you arrive at that sum? A. Well, I can not say exactly that the $7,000 had been arrived at until we made the discovery of the facts, the day the trade was made and Mrs. Coleman came.

Q. What day was it made on? A. I can not tell.

Q. How did you get it exactly $7,000? A. We came to an agreement.

Q. With who? A. With Mrs. Coleman, on my part.

Q. Anybody else? A. I can not say.

Q. When did Mrs. Coleman agree with you that this advancement should be $7,000? A. I did not say what day.

Q. How did you get it into the paper that way? A. We wanted it put in that way, I guess.

Q. Why, and who did it? A. It was talked of between us and agreed that the amount should be $7,000.

Q. Who talked with you? A. Mrs. Coleman.

Q. Well, I will have to ask you again, when was the first time that she agreed that the amount of this advancement should be $7,000? A. Well, I believe, to come right down to the point, that she did not agree to the exact amount of dollars. I got up these papers to file in the estate as you wanted them filed.

Q. * * * We will come again to the original question: How did you arrive at the sum of $7,000 when you fixed up these papers. Where did you get the figures? A. She had talked about it; she did not deny the amount.

Q. * * * When you went to Judge Stoker and had the talk with him about these papers, did you tell him to put in $7,000 as the amount? A. I must have said so, if it is there.

Q. Did you fix these figures alone? A. No, but from what I knew of my father and what the family knew. We could not find anything else to go on. We thought we would allow it to be $7,000, and that would be all right. That is the way it was fixed."

In the first two reports filed by appellant as administrator he charged himself with cash received from James E. Marshall, administrator of his father's estate, to the amount

of $3,234.30, between the dates of January 4, 1893, and August 28, 1895. James E. Marshall paid this money and Scott Marshall received it for the benefit of the estate of appellant's decedent; and it is claimed by appellant that it was "family knowledge" that there had been an advancement to Marietta Coleman's mother, from the estate, of which both these uncles were heirs.

By the document dated January 14, 1895, Mrs. Coleman admitted the advancement of $7,000 to her mother, and by her consent in writing, dated June 5, 1895, she agreed that the report of the administrator of E. B. Marshall, deceased, might be amended so as to show an advancement of $7,000 to her mother. On June 25, 1895, Mrs. Coleman signed a consent that appellant should pay back to E. B. Marshall's estate $3,500, " being money paid through inadvertence and mistake."

James E. Marshall, in settling with Mrs. Coleman and the other heirs of her grandfather's estate, charged her distributive share with $3,500 on account of this advancement to her mother. This fact appears in the final report; so that her other uncles knew of it. Appellant credited his administration account with $3,500, and the whole $7,000 was put in hotchpotch in the E. B. Marshall estate, on distribution.

During all of the time covered by these transactions, Nellie May Goodner was a minor; she was not permitted to and could not, by reason of her minority, have had any share in them, and as to her, all of these transactions, in court and out of court, are impeachable for the strongest of reasons; every allowance of claims, every order made that can be shown to have been in fraud of her rights, may be set aside under the authorities cited and the limitations stated, in passing upon the first assignment of error.

No extended comment upon the evidence is needed. It speaks for itself. In so far as relates to Nellie May Goodner, she and Mrs. Coleman were equal heirs of Edward B. Goodner, deceased.

Conflicting presumptions exist as to the missing page of

the ledger, evidencing this advancement, but the prevailing presumption must be, that the removal of the missing page was due to a fair and deliberate act of E. B. Marshall, who, by tearing it out, intended to destroy it forever.

We are not satisfied that the advancement was established by legal evidence, either as to its origin or its continuance, if so established. There is no evidence that the money had in fact been paid; to make the entries in the ledger competent it must be shown, we think, that the charge which characterized this $7,600 as an advancement was made at the same time that the money was paid, or at least before the statute of limitations had run, particularly since the charges commenced in May, 1866, and ran to October, 1878; otherwise, after the items, or some of them, had been barred by the statute, it would have put it in the power of E. B. Marshall, by an aftercharge, to have changed the course of the distribution of his estate without making a will. 2 Woerner on Administration, Sec. 558; McClintock's Appeal, 58 Mich. 152. Furthermore, the evidence in the index of the ledger tends to show that whatever the charges were, they were against Lyman T. Goodner alone, and not against the mother of Mrs. Coleman.

The declaration of advancement, formulated by appellant and Judge Stoker, seems to recognize this fact, and seeks· to obviate the difficulty by recitals that the advancement was to Lyman T. Goodner and his wife.

This fact, together with the evidence heretofore quoted from appellant's testimony as to this advancement, bears upon his good faith in this matter, and we can not escape the conclusion that his acts, so far as this advancement is concerned, and so far as they affect Nellie May Goodner, were in fraud of her rights, and we are of the opinion that the Circuit Court did not err in sustaining her exceptions to it.

In so far as Mrs. Coleman's exceptions relate to her right in the $3,500 refund, we need not stop to inquire what they were up to the time she executed the agreement of June 5, 1895, unless it has been shown that the agreement is not

binding upon her, since by the agreement her right in the fund, if she had any, was transferred to her three uncles, and her interest in it ceased. Long before the agreement was executed, she had heard and knew about the advancement claimed, and had signed other papers relating to it, and if it be true that at the time she signed them she did not understand the effect of them, and, as she testified, "did not know what an advancement was," she did know on June 5, 1895, what her uncles were claiming, and she had the assistance of her husband, if not of Judge Stoker also, in ascertaining what her rights were, and she then concluded the better course for her was to agree to the refunding scheme; and since the evidence fails to show the value of her interest in the lands transferred to her uncles, and she has evinced no willingness to undo the sale and settlement, we are unable to split the trade for her and possibly thus enable her to reap a reward to which she was not entitled.

It is also insisted by counsel for appellant, as a reason why Mrs. Coleman's exception should not be sustained, that she was a party to the scheme to defraud her half-sister. Of this we are not satisfied, but we are satisfied from the evidence that up to June 5, 1895, she was the dupe of designing men. But if it were true that she was a party to the scheme, that would be no reason for overruling her exception, as she was not in court asking affirmative relief, but she was there to prevent the consummation of a wrong by appellant and his brothers.

She had a right to sell, or lease, to her uncles, for a valuable consideration, all or a portion of her interest in her deceased brother's estate, including as well her interest in the lands and real estate which she had inherited from her grandfather's estate; and if, in making the sale and conveyances, she had been overreached and defrauded by her uncles, she could have applied to a court of chancery to set aside the agreement and cancel the deeds and restore her to her original position in regard to the property.

But she preferred to retain what she had received by the sale and agreement, and she must be held to have estopped

herself from claiming any part of the $3,500 refund, and the court was right in so holding.

Another error assigned by appellant relates to the item of $14.88, appellant's traveling expenses from Chicago and return, in answer to a citation from the court. At the time appellant was appointed administrator of the estate, he was a resident of Marion county, and if he afterward chose to take up his abode in Chicago, he can not be allowed his traveling expenses in coming from and returning to Chicago, in answer to a citation, especially since the citation was properly issued. The court did not err in disallowing the item.

As to the cross-error of Marietta E. Coleman, it is urged by counsel for appellant, that inasmuch as she did not appeal from that portion of the decree holding that she was estopped by her agreement with her uncles from claiming any part of the $3,500 " refund," she can not question the correctness of the decree by cross-error. Since what we have already said disposes of the cross-error adversely to Mrs. Coleman, it becomes unnecessary to pass upon the question thus raised by counsel for appellant.

Complaint is also made that the court erred in remanding the cause to the County Court. If any error in this respect was committed, it does not go to the merits of the case, and is no ground for reversing the decree or any substantial part of it.

The decree of the Circuit Court requiring appellant to surcharge himself with $1,560 of the item of the claim of Harriet E. Marshall, with ten per cent interest, is affirmed, and the decree requiring him to surcharge himself with $14.88, appellant's claim for expenses, is also affirmed.

The decree requiring appellant to surcharge himself with $168 of the claim of Charles P. Marshall is reversed.

The decree requiring appellant to surcharge himself with $1,750 and ten per cent interest of the $3,500 item, and that Mrs. Coleman is estopped from any claim to said item, is affirmed.

The decree charging appellant with costs to be paid out of his private funds is affirmed.

Three-fourths of the costs in this court will be taxed to appellant, and one-fourth to appellees, and the cause is remanded to the Circuit Court, with instructions to enter a decree in accordance with the views herein expressed.