## In Re ANDERSON'S GUARDIANSHIP
## ANDERSON *v.* ANDERSON Et Al.

No. 2962

February 3, 1932.                    7 P. (2d) 814.

*John S. Belford,* for Appellant:

*Chas. L. Richards* and *Melvin E. Jepson,* for the heirs at law and next of kin of Henry Anderson, deceased, and the executrices of the will of Henry Anderson, deceased:

## OPINION

By the Court, COLEMAN, C. J.:

Henry Anderson died testate, November 3, 1930. In due time his will was admitted to probate and letters testamentary issued. Hans Christian Anderson, a minor, and his mother, Bartine Christina Anderson, asserted claims against the estate. Appellant's claim rests upon the assertion that he was the natural son of the decedent, recognized by the decedent as such during his lifetime, but was not mentioned by decedent in his will. His mother's claim is based upon a contract settling the property rights of herself and decedent, executed at the time an action of divorce was pending, wherein decedent was plaintiff and Mrs. Anderson was defendant. On November 26, 1930, Mrs. Anderson entered into an agreement with the heirs and next of kin and executrices of the will of decedent, whereby, in consideration of the payment to her of certain sums of money, she agreed to release the estate from all claim she held, as well as from the claim of appellant.

Pursuant to the terms of said agreement, she applied for and received letters of guardianship, and on July 1, 1931, filed a petition in the second judicial district court, in and for Washoe County, praying that said agreement be ratified by the court, and that she be permitted and allowed to release her rights and the rights of the minor. John S. Belford, having been appointed guardian ad litem of the minor, objected to the approval of that portion of the agreement permitting Mrs. Anderson to release

the rights of her ward for a consideration that moved to her individually and not as guardian. After a hearing was had on said petition, the court entered an order granting the same and permitting the petitioner to release the rights of her ward. It is from this order that appellant appeals.

The order mentioned reads in part as follows: "It is therefore ordered that Bartine Christina Anderson, guardian of the person and estate of Hans Christian Anderson, a minor, execute and deliver to the attorneys for the executrices of the said estate of Henry Anderson, deceased, a release and waiver to said estate of all claim or claims on the part of said Hans Christian Anderson, a minor, as alleged heir at law or next of kin of said Henry Anderson, deceased; that Bartine Christina Anderson, petitioner herein and in her individual capacity, execute and deliver to the attorneys for the executrices of the said estate of Henry Anderson, deceased, a release and waiver to said estate of all claim or claims she holds against said estate by virtue of said agreement of November 26, 1930, upon the payment and for the consideration to be rendered to, said Bartine Christina Anderson as guardian of said minor and in her individual capacity, as mentioned and set forth in that said compromise and agreement of November 26, 1930, between Fred H. Anderson, Botella Anderson Ball, Andrew E. Anderson, Dorothy B. Anderson and Dagmar G. Yoakam, parties of the first part, and Bartine Christina Anderson, party of the second part, which said agreement is attached to the petition herein and to which reference is hereby made."

The objection which was made to the entry of the order in question in the lower court and which is urged on this appeal is that the consideration for the compromise of a claim of a ward must move solely to the ward, and not to the guardian totally or in part.

Mr. Woerner, in speaking of the duties and responsibilities of a guardian in dealing with his ward's estate, observes: "It results from the nature of the guardians'

office that the law cannot permit them to reap any personal benefit therefrom at the cost of the wards; for their office is to protect the interests of the wards. This principle needs no citation of authorities; it is announced in most of the cases adjudicating between guardian and ward, and is self-evident. Hence, it is said that chancery not only punishes corruption in guardians, but treats with suspicion all acts and circumstances evincing a disposition on their part to derive undue advantage from their position. The guardian cannot bind his ward by a contract injurious to the latter. He cannot trade with himself on account of his ward, nor buy or use his ward's property for his own benefit, or as agent for another." Woerner on Guardianship, sec. 60.

The same principles are stated in 12 R. C. L. 1169, in the following words:

"In no relation, except perhaps that of parent and child or husband and wife, are the elements of confidence on one side, and active good faith on the other, more essential than in this. The ward is always a minor, and often so young as to be entirely dependent on his guardian. The guardian is sometimes the ward's father or mother, and, if not, sustains a quasi-parental relation. The government itself is, in a sense, the supreme guardian, whom the individual guardian represents in its solicitude for the welfare of the wards. Guardianship, therefore, is a trust of the highest and most sacred character. * * *

"Dealings of the guardian with the ward's estate must invariably be in the interest of the ward, and not of the guardian. Any transaction by which it appears that the guardian has made a gain for himself, other than his allowed compensation, is presumptively fraudulent, especially if by the same transaction the ward suffered a loss. When, and by what evidence, the unfavorable presumption the court is compelled to indulge against a transaction between guardian and ward, from which the guardian derives benefit and the ward suffers injury, will be removed, it is neither desirable nor possible to define more certainly than to say that the court must

be satisfied that there is an absence of any influence springing out of the relation, and of any violation of duty by the guardian. The act must proceed from the volition of the ward, and he must have full knowledge of its effect."

But we need not look beyond our own jurisdiction for authority on the point. In Deegan v. Deegan, 22 Nev. 185, 37 P. 360, 363, 58 Am. St. Rep. 742, it is said: "The office of guardian is one of trust and obligation. He is bound to act for the best interest of his ward, and not for his own; and, whenever he seeks to gain an advantage at the expense of his ward, such act is fraudulent."

In 28 C. J. at p. 1154, it is stated that the guardian cannot purchase, use, or in any way deal with his ward's property for his own benefit or profit. He is bound to protect the interest of his ward, and may not place himself voluntarily in a position where his own personal interests are in conflict with those of his ward.

In Stillman v. Young, 16 Ill. 318, the wholesome principle is declared that a guardian cannot be allowed, by blending the two characters of guardian and administrator, to throw the administration and management of the two estates into a kind of hotchpotch confusion, and thereby sustain a misapplication of the funds and interest of the one to the other. See, also, Foteaux v. Lepage et al., 6 Iowa, 123.

"It was the duty of the guardian to keep the money of his ward separate and intact from his own funds, and invest the same for the best interest of his ward." Deegan v. Deegan, supra.

"It was the clear legal duty of a guardian to keep separate all guardianship funds in his hands, and not to commingle them with his own individual property." Crothers v. Crothers, 123 Md. 603, 91 A. 691, 693.

In Sparhawk v. Sparhawk, 114 Mass. 356, the court said: "It is one of the primary duties of a trustee [which a guardian is] to keep the funds of the trust separate from his private funds, and not, by mingling

them together, to expose the trust funds to the risks to which his own property may become liable."

To the same effect are White v. Parker, 8 Barb. (N. Y.) 48; In Re Allard et al., 49 Mont. 219, 141 P. 661.

Furthermore, it is generally the duty of the guardian to invest the funds of the ward so as to produce an income. 28 C. J. 1139; 12 R. C. L. 1131.

Our statute (section 9501, N. C. L.) imposes upon a guardian, among other duties, that of managing the estate for the best interest of his ward, and within one year after his appointment, and annually thereafter, to render under oath a true account of the property of the estate and of the money of the ward.

From the foregoing statements of legal principles, it will be seen: (1) That a guardian cannot be permitted to reap any personal benefit from the estate of his ward, other than compensation for his services; (2) that a guardian will not be allowed to blend or commingle the assets of the ward with those of his own; (3) that it is the duty of the guardian to invest the funds of his ward so as to produce an income; and (4) that he must make annual report of the condition of his ward's estate.

The order appealed from provides for the payment of a certain sum to Bartine Christina Anderson "as guardian of said minor and in her individual capacity." It does not undertake to segregate the amount she is to receive in settlement of her individual claim from that which she is to receive as the estate of her ward. The order permits, in the words of Stillman v. Young, supra, a blending of the amount she is to receive individually and as guardian, and "to throw the administration and management of the two estates in a kind of hotch-pot confusion." No specific sum being designated as the amount to go to the ward, the guardian would not be able to keep the money of her ward separate and intact from her own funds. Neither could she, as our statute requires, render an annual statement of the estate of the ward, or invest the same to his advantage.

It is clear that the court erred in entering the order it did.

It is ordered that the order appealed from be, and the same is, reversed, and the matter is hereby remanded for further proceedings in accordance with the views expressed herein.