24 Ariz. App. 148 (1975)
536 P.2d 717
In the Matter of the GUARDIANSHIP OF Lillian E. STYER, an incompetent.
Herbert J. SCHWAGER, former guardian, and Ruth Schwager, his wife, Appellants,
v.
Dean C. CHRISTOFFEL, guardian and conservator of the Estate of Lillian E. Styer, Appellee.
No. 2 CA-CIV 1637.
Court of Appeals of Arizona, Division 2.
June 13, 1975.
*149 Timothy Weeks, Phoenix, for appellants.
Miller, Pitt & Feldman, P.C., by David J. Leonard, Tucson, for appellee.
OPINION
HOWARD, Chief Judge.
Appellant Herbert J. Schwager, the former guardian of the estate and person of Lillian Styer, and his wife, appeal from a superior court judgment which surcharged to them the sum of $381,403.21.
In 1960, Herbert Schwager was an investment advisor with a well-known stock brokerage firm. Among the stock portfolios he handled was that of Lillian Styer. Schwager had become a personal friend of Mrs. Styer and when her eyesight failed he petitioned for appointment as guardian of her person and property. He was appointed as guardian and was authorized by the court to receive the sum of $9,000 per year for his services. The inventory and appraisal filed by Schwager on September 24, 1969 showed the estate to have a value of $1,303,908.15.
In 1969, Schwager, pursuant to his petition, was authorized by the court to buy certain income-producing real estate for the sum of $145,000. In January of 1970, he again petitioned and received authority to buy certain vacant lands for $26,725. In March of 1970, he was authorized by the court to sell $205,000 worth of securities in the estate in order to place a building on the vacant land and also to execute a building contract. In July of 1970, Schwager was given authority to borrow the sum of $70,000 from the bank and pledge certain estate securities as collateral for the loan.
*150 On January 20, 1971, it came to the attention of superior court Judge Lee Garrett, that there had been a great deal of activity in the estate and no accounting had ever been made by the guardian. He ordered the guardian to appear on March 26, 1971 and show cause why an order should not be entered requiring (1) an accounting, (2) a new inventory and appraisement and (3) a substantial increase in the guardian's bond. Prior to the date set for the hearing, Schwager was authorized by another superior court judge to borrow more money from the bank and to secure the loan with additional estate securities.
On March 18, 1971, Schwager filed an affidavit of bias and prejudice against Judge Garrett and the matter was permanently assigned to Judge Alice Truman, who, on April 5, 1971, ordered the guardian to file an account within sixty days.
On May 11, 1971, the attorney for the guardian retired from the practice of law and Richard Bailey, Esquire, now deceased, was substituted as Schwager's attorney.
Judge Truman granted several continuances to the guardian on the matter of the accounting. The record shows that in the meantime more money was borrowed from the bank, more stocks pledged as collateral and an accounting firm was hired by the guardian to prepare an accounting, all with court authority.
Finally, on June 9, 1972, the court, noting that no accounting had ever been made, removed Schwager as guardian and appointed Lillian Fisher as successor guardian. Thereafter Lillian Fisher acquired new counsel to aid her in determining what happened to the assets of the estate.
Schwager, who was still being represented by Richard Bailey, then filed an affidavit of bias and prejudice against Judge Truman in an attempt to disqualify her from acting in this matter. A hearing on the affidavit was held before Judge J. Richard Hannah who determined that there was no cause shown for disqualifying Judge Truman.
Judge Truman appointed a certified public accountant, Mr. Seby, as referee in order to determine the dealings of Mr. Schwager. Mr. Seby took testimony of various witnesses and filed his four-volume report.
Schwager noticed the taking of Seby's deposition and issued therewith a subpoena duces tecum. Upon motion of the new guardian, this notice and the subpoena was quashed. A hearing on the issue of surcharging Schwager was eventually held. The referee's report was introduced into evidence and upon stipulation of counsel only certain items were challenged. After hearing the evidence the court made extensive findings of fact and conclusions of law which led to the entry of judgment against appellants.
The record of Mr. Schwager's administration of his guardainship was indeed dismal. He decided that he needed to diversify the nature of the Styer estate which consisted almost enitrely of common stocks. This was the reason for the purchase of the income-producing property. In 1970, when a major portion of the common stock was liquidated, Mr. Schwager constructed a building which housed two businesses, Tiffany West and Bridal Boutique, Inc. Tiffany West, a beauty salon, was a partnership comprised of his wife and another woman. Bridal Boutique was a disaster from the beginning. Schwager, without court approval, loaned money to Tiffany West and used at least $40,000 of the Styer estate funds to purchase for himself shares of stock in Bridal Boutique. Both businesses became defunct and Bridal Boutique filed in bankruptcy.
A separate corporation was used by Mr. Schwager to manage the building. Large sums of money were taken from the Styer estate and paid to the building management corporation which in turn paid out sums of money to Schwager and his family. It is also clear that Schwager commingled large sums of money from the sale of estate securities in his own personal bank account. By the time the new guardian took over *151 the Styer estate the assets consisted of some shares of stock which were pledged as collateral to the bank on outstanding loans and a small piece of vacant property used in connection with the Tiffany West-Bridal Boutique building. The income-producing property, Mrs. Styer's house, and the Bridal Boutique-Tiffany West building had all been sold for taxes. The house was subsequently redeemed.
Appellants claim the following errors require reversal: (1) the quashing of the notice to take the referee's deposition and the subpoena duces tecum, (2) foreclosing discovery of the successor guardian's objection to the former guardian's accounting, (3) the referee's exceeding his authority, (4) the denial of appellants' motion for a change of judge, (5) improper surcharge of certain items and (6) inaccurate computation of the surcharge.
As for the first three claimed errors, assuming but not deciding that there was error, appellants have failed to show any prejudice as a result thereof. We parenthetically note that the second claimed error is rather ludicrous since the former guardian never filed anything that remotely resembled an accounting.
As to the right to disqualify Judge Truman it is apparently appellants' claim that the first affidavit of bias and prejudice against Judge Garrett was pursuant to A.R.S. § 12-409 on March 18, 1971. On March 1, 1972, the amendment to Rule 42(f) of the Arizona Rules of Civil Procedure, 16 A.R.S., became effective. It is appellants' contention that the amendment of the rule gave an additional peremptory challenge as a matter of right. This contention is without merit. In King v. Superior Court in and for the County of Maricopa, 108 Ariz. 492, 502 P.2d 529 (1972), the court stated:
"Prior to our amendment of R.C.P. 42(f), it was well-settled that a party had a right to a peremptory challenge of one judge.... The change of judge was accomplished by an affidavit of bias and prejudice which was a mere form and not intended or required to be true.
* * * * * *
Defendant's argument that the right to a peremptory challenge is a new right that came into existence only by the amendment to the rule, is not sound. He had that right before the rule was amended; only before, he had to file an affidavit of prejudice, while now he must file instead, a `Notice of Change of Judge.' The old affidavit of bias and prejudice was really the same thing." 108 Ariz. at 493-494, 502 P.2d at 531.
A litigant is entitled to only one peremptory challenge of a judge. Hickox v. Superior Court in and for the County of Maricopa, 19 Ariz. App. 195, 505 P.2d 1086 (1973).
It is also appellants' contention that Judge Hannah was incorrect in not sustaining a challenge for cause. This challenge was based on the fact that Judge Truman saw in the file affidavits on the principals in Bridal Boutique which stated that Schwager purchased stock in the corporation with Styer estate funds, and pleadings and reports by the new guardian which would indicate that Schwager had depleted the estate assets. Schwager also relies on Judge Truman's holding him in contempt for not filing an accounting as evidence of bias and prejudice.
Bias and prejudice means a hostile feeling or spirit of ill-will, or undue friendship or favoritism, towards one of the litigants. The fact that a judge may have an opinion as to the merits of the cause or a strong feeling about the type of litigation involved, does not make the judge biased or prejudiced. Haslam v. Morrison, 113 Utah 14, 190 P.2d 520 (1948); 48 C.J.S. Judges § 82. We find nothing in the record which would support the challenge of Judge Truman for cause.
We now address ourselves to the alleged improper surcharge of items and *152 the inaccurate computation of the surcharge. Under the statute controlling this guardianship, prior court approval was required for investment of estate assets. A.R.S. § 14-813. Since guardianship proceedings were in accordance with and governed by laws relating to the estates of decedents except as otherwise provided by law, A.R.S. § 14-815, Schwager was required to produce and file vouchers for all charges, debts, claims and expenses he had paid. A.R.S. § 14-626.01. Vouchers for estate expenditures may be dispensed with if lost or destroyed, but their absence should be explained and the testimonial detail of precise expenditures in question and their amount should be required. In re Estate of Wiswall, 11 Ariz. App. 314, 464 P.2d 634 (1970). Many of Schwager's expenditures were unsupported by vouchers and others, although supported by vouchers, were questionable. The burden was on Schwager to show the propriety of these payments.
A guardian may be surcharged for any expenditures or disbursements not made for his ward's benefit or not proper or necessary under the circumstances. In re Estate and Guardianship of Purton, 7 Ariz. App. 526, 441 P.2d 561 (1968); 39 C.J.S. Guardian & Ward § 156 P. 260. It is axiomatic that a guardian cannot be permitted to reap any personal benefit from the estate of his ward other than compensation for his services and will not be allowed to blend or commingle the assets of his ward with his own. In re Anderson's Guardianship, 54 Nev. 108, 7 P.2d 814 (1932).
Without being specific, appellants claim that most, if not all of the amounts in the judgment, were improperly surcharged. We have read the entire record and it leaves no doubt that the former guardian did not sustain his burden of proof.
One of the items purchased by Schwager was a new stationwagon. He claims he needed the stationwagon to manage the estate properly. The court rightfully found that there was no authority to buy the stationwagon and that it was not for the benefit of the estate. It was subsequently sold by the new guardian for $1,900 but this sum was not credited. Appellee also concedes that appellants were surcharged twice for the $500 downpayment on the stationwagon. Appellants are therefore entitled to a credit of $2,400 on the judgment.
The trial court's findings of fact also indicate that an additional sum of $213.59 was surcharged twice.
Appellants finally contend that the court erred in surcharging them for the sum of $13,000 paid to attorney Richard Bailey and the monies paid to the accounting firm which Schwager originally engaged to file an accounting. We do not agree with either of these contentions. The trial court concluded that Richard Bailey's fees were incurred in representing Mr. Schwager personally in the Bridal Boutique's bankruptcy proceedings. This conclusion cannot be gainsaid. The court also found that Schwager refused to turn over to the accountants everything necessary for an accounting and that the "accounting" filed was therefore valueless and of no benefit to the estate. This finding by the trial court is supported by the evidence.
The judgment is reduced to the sum of $378,789.62 and the judgment is affirmed as modified.
KRUCKER and HATHAWAY, JJ., concur.