701 P.2d 1189

The STATE of Arizona, Appellee,

v.

Stanley ASBURY, Appellant.

Nos. 2 CA–CR 3393, 2 CA–CR 3394–2.

Court of Appeals of Arizona,
Division 2.

Nov. 13, 1984.

Review Denied April 3, 1985.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Robert S. Golden, Phoenix, for appellee.

Hirsh & Fines, P.C. by Terry Chandler, Tucson, for appellant.

OPINION

HOWARD, Judge.

Appellant, a physician, was originally charged with two counts of sexual assault and two counts of sexual abuse against two different victims. He was later indicted for sexual assault and sexual abuse of two other victims. Pursuant to a plea agreement he pled no contest to two counts of attempted sexual contact which occurred during female pelvic examinations and the other charges were dismissed. The record shows that the contact consisted of masturbating the victims during the examination. The offenses, violations of A.R.S. §§ 13–1404 and 13–101, could have been punished either as class 6 felonies or class 1 misdemeanors pursuant to A.R.S. § 13–702(H), and the only issue before the court on sentencing was whether the offenses would be treated as felonies or misdemeanors.

At the date set for sentencing, which had been twice continued at the defense attorney's request, the trial court expressed concern that the defense had several witnesses to present. The trial court noted that no request for a mitigation hearing had been made and advised defense counsel that he would give him only half an hour for the sentencing hearing. Defense counsel pointed out to the court that only two days previously he had received a copy of the following letter, signed by the medical staff of Northern Cochise Community Hospital (apparently every physician in the Willcox area) which had been sent to the court:

"* * *

Through this letter, the Medical Staff of Northern Cochise Community Hospital wishes to express concern regarding the outcome of sentencing for Dr. Stanley Asbury to be seen before your court on December 12, 1983.

As physicians, we are very concerned with the feelings of the members of the community regarding the medical profession as a result of Dr. Asbury's actions.

The physician/patient relationship is one of trust; and when this trust is violated, it is serious to both the medical profession and to society. It is especially tragic for the patients and victims involved. Dr. Asbury has been found guilty of the sexual molestation of four women of our community and it is the consensus of the Medical Staff that the penalty for such action should be sufficient to ensure removal of his license and thereby the inability to continue practicing medicine. If his actions are considered only a 'misdemeanor', Dr. Asbury will probably be free to continue his practice as before. It is our sincere hope that you will be aware of both the professional and public opinions of those communities most affected by this physician's past actions and that you would have considered all documentation/information available. Through the process of verifying Dr. Asbury's credentials for consideration of Medical Staff appointment, we have accumulated substantial information and history regarding his California and Arizona practices. This information was supplied to the Arizona Board of Osteopathic Examiners and to the Cochise County Attorneys [sic] Office in connection with this case.

We hope that in reviewing this matter, you will recognize the seriousness of Dr. Asbury's actions. Please consider our concerns before rendering your decision in this case. If you have any questions, please feel free to call upon any member of the Medical Staff for additional information or background. Thanking you in advance for your anticipated cooperation. * * * *"

Defense counsel also told the trial court that he had just received that morning a copy of a letter sent to the court by Mr. Abrutz, the administrator of Northern Cochise Community Hospital. This letter states:

"* * *

As the administrator of a small community hospital and nursing home in southern Arizona, I feel a great deal of responsi-

bility toward both the community as a whole and the medical community of our area. For that reason, I would like to express my concerns about the upcoming sentencing of Dr. Stanley Asbury on December 12.

When Dr. Asbury applied for Medical Staff privileges at our hospital, we began a credentials check in accordance with our hospital policy. Over a period of time, we accumulated a large file regarding his previous practices and professional behavior in both California and Arizona. Copies of that file have been submitted to the Board of Osteopathic Examiners and the Cochise County Attorney's Office.

As you are aware, Dr. Asbury has been charged with and found guilty of four counts of attempted sexual molestation of female patients. I feel this is a very serious breach of the patient-doctor relationship which cannot be taken lightly. Despite the fact that Dr. Asbury was not granted privileges at this hospital, the state-wide publicity given his case casts a negative reflection on our local medical community and on the medical profession as a whole. The penalty for such a breach must be great enough to discourage any recurrence of this type of behavior.

Thank you for your consideration in this case. * * * "

Defense counsel then requested the trial court to continue the sentencing for three weeks to allow him to refute the letters or, alternatively, to allow him to call the witnesses which he had gathered at the last minute.

The trial court stated that this was not a mitigation hearing and that the request for a mitigation hearing was denied. However, the court then told defense counsel that it would allow appellant's psychiatrist to testify but that the proceedings had to end at noon because it was a law and motion day and the court did not have time for a full-blown mitigation hearing. The trial court stated that it had read the presentence report and papers presented to it.

This report had fifteen letters from appellant's patients attached to it saying what a good doctor he was and how vital it was that he remain in practice in the Willcox area.

Appellant personally addressed the court and stated that he thought he had caused emotional damage to the victims. He was sure that their husbands were very upset about the situation.

Defense counsel again asked the trial court for a continuance because of the two letters so he could explore the truthfulness of the allegations made or the "purity" or lack of "purity" behind the letters. In the alternative, he requested that he be allowed to present two of the 18 witnesses from Willcox to attest to appellant's medical competence and the community's need to have him stay there. The motion for continuance was denied and the trial court also denied defense counsel's request that he be allowed to present his witnesses, apparently believing that defense counsel wanted to contest the charges. The court stated:

"There, are, I assume, by the admission or the no contest plea that there is some credibility or veracity to the charges alleged through the victims as set forth in the presentence report."

Appellant's psychiatrist then testified in appellant's favor and was cross-examined by the state.

Defense counsel again stated that he had witnesses to attest to Asbury's capabilities as a physician and the necessity that he continue to practice in the Willcox area. He also asked the trial court to continue the matter for a year. Defense counsel further told the court that he wanted to present testimony about the political situation—in particular, the fact that the victims had made complaints about their treatment to the staff of the Northern Cochise Community Hospital and that Mr. Abrutz referred the women to Abrutz' personal lawyer for a possible civil action against the doctor.

The court responded to this request by stating that the letters he had received, on

both sides, were helpful only to a limited degree and that he really did not give much value to the letters except as an indication of the concern in the community for or against the doctor and that he was going to make his decision more on what was contained in the presentence report and the facts of the case. The court also told defense counsel that he did not give any value to reports in the presentence report that Asbury may have had trouble and made mistakes in his practice in other places.

Defense counsel was then given a chance to argue to the court. He started out by suggesting that this whole business with Asbury got started when one of the victims, Mrs. S, went to the Northern Cochise Community Hospital and the doctors there first called in the hospital administrator and talked to a personal injury lawyer before telling the police what happened. He then mentioned victim Mrs. J and wondered why she went back to the doctor after the original unlawful event. (This information about Mrs. J's actions is contained in the presentence report.) Next, defense counsel mentioned victim Mrs. L whom he stated had a long history of psychosomatic illness and who had consulted 15 or 20 doctors in Tucson, and that he did not think that whatever happened in any pelvic examination with Asbury could be attributed to or could be the root problem of whatever suffering Mrs. L is experiencing. Defense counsel then suggested that the whole situation was politically motivated and stated that when he looked at it as a whole he wondered what the doctor had really done.

The prosecutor then argued to the court. Afterward the trial court asked if there were any victims who wished to address the court. Three of them did: Mrs. S, Mrs. L and Mrs. J. They testified as follows:

"MRS. [S]: First of all, I would like to say that everything I said, whether it was to the police department or any of my attorneys or to the polygraph examiner was truthful.

I didn't make any of this up.

It was not a criminal conspiracy.

I wasn't sent here to be taking this mess. I didn't even know these people before I came here.

I do wish that everyone present could think about the effect on the victim [sic] and their families.

I think when a woman is violated, her husband and her children are also.

The fear and the problems that you experience later all testify to the results of having been a victim in a crime.

I think, if all the husbands in this room could think about the effect on their wives or how they might have handled the situation, they might feel it a little more personally, and all I am hoping is that Doctor Asbury is not continued, allowed to continue to practice medicine.

I am hoping that this will not happen to other women as to myself and as it has to myself and others.

&ast; &ast; &ast; &ast; &ast; &ast;

MRS. [L]: I would like to say that he violated me, and by violating me, he violated my family and has made my life rather miserable, and I feel he should be punished for what he has done to all of us.

I can't say any more.

&ast; &ast; &ast; &ast; &ast; &ast;

MRS. [J]: I simply would like to say that the attorney made a good statement by throwing in that I went a week later for a pelvic examination.

I went because of an infection that was caused by the previous examination, and I was raised to get up and ride a horse that threw me, and in such a way, I was handling my emotional destruction by going back in and facing this man and handling my own fears, because what he did was violate my trust in him.

That is far worse than the physical violation. I feel he is violating the trust, because, a doctor is, granted, only human, but you do look to them for help, and I feel like—

THE COURT: Did anybody tell you the infection was caused by the doctor? That's your own belief?

MRS. [J]: This is something that has happened to me before, and I have been told before by various doctors what causes the type of infection I got.

I was well aware of what had caused it. I knew when it came on just exactly why it happened. I, in a sense, wanted him to be aware of what had happened.

If he knew anything about gynecology at all, he would be aware what caused the infection.

I was getting back on that horse and riding again and mastering my fears and my own emotions and letting him know that he had done to me just physically if not emotionally, and I think that the attitude and the way I presented myself to him that second time let him know in no uncertain terms was I interested or would I ever be interested, and the fact that still amazes me is that he is the one that did the blood tests for my husband.

He knew we were newlyweds. There was no way he could even dream I would be interested in him physically or emotionally or in any other way except as being a doctor to help me with physical problems.

\* \* \* "

Defense counsel objected to not being allowed to cross-examine the victims, but made no offer of proof to show what he wished to bring out in his cross-examination. Presumably, he wished to show that Mrs. J went back a second time to see the doctor after the original incident. The court already knew this from the presentence report and Mrs. J spoke about the reason for it when she addressed the court. As for Mrs. L, we can only surmise that defense counsel wished to ask Mrs. L if she had seen several doctors in Tucson in order to show that she was psychosomatic. He had already placed this information before the court by his own statement to the court.

The trial court then designated the offenses as class 6 felonies, fined appellant $1,370 and sentenced him to three years' probation.

Appellant contends that the trial court erred in (1) denying his request for a mitigation hearing before determining the sentence; (2) denying his request for a continuance and (3) not allowing defense counsel to cross-examine the three victims.

The trial court erred in its conclusion that appellant was not entitled to a mitigation hearing because he did not make a request for the hearing in advance.

Rule 26.7(a), Arizona Rules of Criminal Procedure, 17 A.R.S., states:

"When the court has discretion as to the penalty to be imposed, it may on its own initiative, and shall on the request of any party, hold a pre-sentencing hearing at *any time prior to sentencing.*" (Emphasis added)

The comment to the above rule states that a request by a party may be made at any time. This right to a presentence mitigation hearing is an absolute right, and the only limitation as to timeliness is that it must be requested prior to sentencing. *State v. Ford,* 125 Ariz. 9, 606 P.2d 826 (1980). The trial court erred here when it stated that appellant was not entitled to a mitigation hearing because he failed to make a request for such a hearing prior to the date of sentencing. However, the record shows that in spite of the fact that the trial court denied a mitigation hearing, it went ahead and held one.

Rule 26.7(b) states the nature and purpose of a presentence hearing:

"... At the hearing any party may introduce any reliable, relevant evidence including hearsay, in order to show aggravating or mitigating circumstances, to show why sentence should not be imposed, or to correct or amplify the presentence, diagnostic or mental health reports, the hearing shall be held ...."

As for the request for a continuance and the refusal of the trial court to hear any of appellant's 18 witnesses, we do not believe that the court erred. Since the purpose of a presentence hearing is to ensure that the sentencing judge is fully informed as to the character of the individual to be sentenced

and the circumstances of the crime, it is not error to deny a continuance when it becomes apparent that the defendant does not contemplate bringing to the court's attention any matters which had not already been considered.

Here, the trial court had 15 letters in the presentence report, which it read, which brought to the court's attention the fact that the doctor was a competent doctor, according to these patients, and that he was vitally needed in the Willcox area. As far as any economic and political motives behind the letters by the hospital administrator and the staff of the hospital, if there were any such motives they would be evident by the letters themselves.

■ Furthermore, appellant's contention that they were motivated by such motives was simply speculation on the part of the defense attorney, based only on the fact that these letters were written. He had no facts to support this contention other than the letters and never made an offer of proof as to what exactly he would prove and who was going to prove it. The trial court stated that it considered the doctor a competent doctor and that it was basing its decision upon the presentence report itself and the facts of the crime rather than letters from various parties. We cannot see how appellant was prejudiced by the failure to grant a continuance or the failure to allow any of the 18 witnesses to testify.

■ As for the failure to allow defense counsel to cross-examine the victims, this is another matter. The trial court was incorrect in its conclusion that defense counsel was not entitled to cross-examine the victim. A.R.S. § 13–702(F) provides:

"The victim of any felony or the immediate family of the victim if the victim has died as a result of the conduct of the defendant may appear personally or by counsel at any aggravation or mitigation proceeding to present evidence and express opinions concerning the crime, the defendant or the need for restitution. The court in imposing sentence shall consider the evidence and opinions presented by the victim or the victim's immediate family at any aggravation or mitigation proceeding or in the presentence report."

The statute, enacted in 1982, gives the victims of a crime the right to appear on their own or through counsel at the aggravation or mitigation proceedings even though not called by the state or the defense. The trial court was of the opinion that since the statute did not allow for cross-examination, no such examination was allowable. This conclusion is erroneous. Although the confrontation clause, by its terms, applies only to trials and not to sentencing hearings, *State v. Ortiz*, 131 Ariz. 195, 639 P.2d 1020 (1982), basic concepts of fairness, justice and impartiality mandate that the defendant be allowed, at an aggravation and mitigation hearing, to cross-examine the victims in order to bring out mitigating· circumstances. See *State v. Hanley*, 108 Ariz. 144, 493 P.2d 1201 (1972). In reversing the sentence in *Hanley*, the court stated:

"In the instant case, the defendant had a right to show any evidence which would mitigate the seriousness of the crime to which he had pleaded guilty. Undue restrictions on the right to cross-examine examine strikes [sic] at the very heart of the adversary system:

' * * * "[a] denial of cross-examination without waiver * * * would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it. [citations omitted]" ' " 108 Ariz. at 148, 493 P.2d 1201.

We think that the record here shows, although there was never a formal offer of proof, that appellant desired to cross-examine Mrs. J and Mrs. L in order to show circumstances which made the case less serious as far as the impact of the conduct upon the victims. Argument of counsel regarding Mrs. S would also indicate that he intended to show the same thing as to her. We are constrained to vacate the sentence in this case.

The sentence is vacated and the case is remanded to the trial court for rehearing,

if requested, and resentencing pursuant to this opinion.

BIRDSALL, C.J., and HATHAWAY, J., concur.