107 P.3d 366 (2005)
210 Ariz. 40
The STATE of Arizona, Appellee,
v.
Joseph Louis CHIAPPETTA, Appellant.
No. 2 CA-CR 2001-0433.
Court of Appeals of Arizona, Division 2, Department B.
February 28, 2005.
*369 Terry Goddard, Arizona Attorney General, By Randall M. Howe and Diane M. Acosta, Tucson, for Appellee.
Susan A. Kettlewell, Pima County Public Defender, By Lisa M. Hise, Tucson, for Appellant.

*367 OPINION

ESPINOSA, J.
¶ 1 A jury found appellant Joseph Chiappetta guilty of fraudulent scheme and artifice, a class two felony; taking the identity of another, a class five felony; two counts of forgery, class four felonies; and trafficking in stolen property, a class two felony. After the state proved Chiappetta had twelve prior felony convictions, the trial court sentenced him to concurrent, substantially aggravated prison terms, the two longest of which were thirty-five years. On appeal, Chiappetta argues that he was denied his right to a fair and impartial judge and challenges the trial court's denial of his motion for mistrial and his counsel's motion to withdraw from the representation. He also contends the trial court erred by denying his request for a mitigation hearing and that his aggravated sentences must be vacated in light of the United States Supreme Court's recent decision in Blakely v. Washington, ___ U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). We affirm.

Factual and Procedural Background
¶ 2 While in Florida, Chiappetta met the victim, K., after he responded to Chiappetta's classified advertisement for office equipment and gave Chiappetta his business card. Between March and May of 2000, Chiappetta obtained K.'s social security number, and date of birth, acquired an Arizona driver's license featuring his own photograph and K.'s biographical information, and rented an apartment under K.'s name. Chiappetta also opened several different bank accounts and charge accounts and applied for a car loan using K.'s identity. Chiappetta ultimately made thousands of dollars in purchases using the fraudulent accounts. He was apprehended a few months later after an employee at a jewelry store where he had attempted to purchase some merchandise suspected fraud and telephoned K.'s wife.
¶ 3 Although Chiappetta appeared in the courthouse on the morning of the first day of trial, he left before his attorney arrived and before the proceedings were scheduled to begin. His counsel, with whom he had been in sporadic contact that day, reported to the court that Chiappetta had visited two hospitals, allegedly seeking treatment for "[i]ntense pain in his head," and eventually had gone to "a friend's trailer [to] recuperat[e]." He did not thereafter reappear for the trial.
¶ 4 The trial judge found that Chiappetta had voluntarily absented himself and, throughout the trial, the judge repeatedly asked defense counsel about Chiappetta's whereabouts and ordered counsel to try to contact him. The judge also rejected counsel's offer to stipulate to Chiappetta's identity. Ultimately, the judge ordered defense counsel to telephone Chiappetta and ask him where he was and to tell him he was required to report to the court. Defense counsel objected on the ground that disclosing his client's whereabouts would force him to violate the attorney-client privilege. The court disagreed and again ordered counsel to contact his client to learn his whereabouts.[1] Despite repeated attempts throughout the course of the trial, defense counsel advised the court he was unable to locate Chiappetta and the trial concluded without him.
*370 ¶ 5 The jury found Chiappetta guilty of all charges. At sentencing, the trial court found as aggravating factors Chiappetta's twelve prior felony convictions; his eleven previous imprisonments and probationary terms; the failure of previous rehabilitative efforts; the financial harm caused to multiple victims over a lengthy time period; and the emotional harm to K. Several potential mitigators were discussed but it appears the trial court did not actually find any. This appeal followed.

Fair and Impartial Judge
¶ 6 Chiappetta first argues that the trial judge was biased against him, which deprived him of a fair trial and negatively affected his sentence. "A party challenging a trial judge's impartiality must overcome a strong presumption that trial judges are "`free of bias and prejudice.'" " State v. Cropper, 205 Ariz. 181, ¶ 22, 68 P.3d 407, 411 (2003), quoting State v. Medina, 193 Ariz. 504, ¶ 11, 975 P.2d 94, 100 (1999), quoting State v. Rossi, 154 Ariz. 245, 247, 741 P.2d 1223, 1225 (1987). "Overcoming this burden means proving `a hostile feeling or spirit of ill-will, or undue friendship or favoritism, towards one of the litigants.'" Cropper, 205 Ariz. 181, ¶ 22, 68 P.3d at 411, quoting In re Guardianship of Styer, 24 Ariz.App. 148, 151, 536 P.2d 717, 720 (1975). Moreover,
"[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."
State v. Henry, 189 Ariz. 542, 546, 944 P.2d 57, 61 (1997), quoting Liteky v. United States, 510 U.S. 540, 555-56, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474, 491 (1994).
¶ 7 Chiappetta argues that the trial judge's imposition of substantially aggravated prison terms is illustrative of the fact that the judge was prejudiced against him. He insists the judge was looking for "any excuse" to impose those terms, pointing to a number of tense and often heated colloquies with defense counsel throughout the trial. He also notes that, before the sentencing hearing, the judge had commented that he was inclined to impose an aggravated sentence.
¶ 8 We find no merit to Chiappetta's argument. His extensive criminal record amply justified the maximum prison terms and the judge emphasized that factor at sentencing. Moreover, the judge's statement about the sentence it was inclined to impose did not reflect bias; rather, it gave Chiappetta and his counsel notice of the probable outcome in view of the multiple offenses and Chiappetta's significant criminal history. Indeed, in that regard, A.R.S. § 13-702.01(I) provides that, "[t]he court shall inform all of the parties before sentencing occurs of its intent to increase or decrease a sentence pursuant to this section."
¶ 9 Moreover, we cannot say the trial judge demonstrated outright "hostil [ity]" or a "spirit of ill-will" against Chiappetta. Cropper, 205 Ariz. 181, ¶ 22, 68 P.3d at 411, quoting Styer, 24 Ariz.App. at 151, 536 P.2d at 720. Although the judge plainly was frustrated and annoyed with Chiappetta's absence from the trial and with his counsel's recalcitrance, the record does not demonstrate that Chiappetta was denied any of his due process rights to a fair trial and impartial sentencing. See Liteky, 510 U.S. at 555-56, 114 S.Ct. at 1157, 127 L.Ed.2d at 491. ("Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women ... sometimes display.").

Motion for Mistrial and Motion to Withdraw
¶ 10 In a related argument, Chiappetta maintains that the trial court improperly denied his motion for mistrial and his attorney's motion to withdraw as his counsel, both of which were based on the court's alleged interference in the attorney-client relationship. "The trial court has broad discretion in ruling on a motion for mistrial, and failure to grant the motion is error only if it was a clear abuse of discretion." State v. Murray, 184 Ariz. 9, 35, 906 P.2d 542, 568 (1995). "A declaration of a mistrial is the *371 most dramatic remedy for trial error and should be granted only when it appears that justice will [otherwise] be thwarted." State v. Adamson, 136 Ariz. 250, 262, 665 P.2d 972, 984 (1983). We also review a trial court's denial of a motion to withdraw as counsel for an abuse of discretion. See State v. Jones, 185 Ariz. 471, 917 P.2d 200 (1996).
¶ 11 Chiappetta contends a mistrial was required because the court created "an irreconcilable conflict between [Chiappetta] and his counsel by ... constantly placing defense counsel in a position to be at odds with [Chiappetta] and continuously ordering counsel to call [him] ... so that he could be arrested."[2] In denying the motion, the trial court reasoned that any deterioration in the attorney-client relationship had no effect on defense counsel's ability to effectively represent his client. The record supports that determination. Counsel thoroughly cross-examined the state's witnesses, argued to the jury that K. had willingly participated in Chiappetta's fraudulent scheme, and effectively challenged the sufficiency of the state's evidence. Indeed, the jury acquitted Chiappetta on one count. We note that all of the exchanges between the trial court and defense counsel occurred either outside of the jury's presence or privately at sidebar. Cf. State v. Armstrong, 208 Ariz. 345, 93 P.3d 1061 (2004) (reversal not required where rancorous exchanges between counsel were conducted in jury's absence). Because the record does not show that Chiappetta was prejudiced by any friction between court and counsel, we necessarily find that Chiappetta's motion for mistrial on that basis was properly denied.
¶ 12 Likewise, the trial court did not err by denying counsel's motion to withdraw because, again, nothing in the record establishes that counsel's representation of Chiappetta had been compromised. See State v. Henry, 176 Ariz. 569, 863 P.2d 861 (1993). Chiappetta has failed to point to anything concrete suggesting that the court's demands affected his representation, beyond the amorphous suggestion that the relationship was thereby "chilled." That Chiappetta reportedly stopped telephoning defense counsel after the trial judge left a message for Chiappetta during trial does not demonstrate that counsel's representation of him had been negatively affected. And, Chiappetta has not established how further communication would have assisted his counsel during the remaining portion of trial.
¶ 13 The record shows that the court's interaction with counsel was largely a collateral matter to the trial, that any rancorous exchanges, as mentioned above, took place outside the jury's presence, and that Chiappetta had voluntarily absented himself well before there was any discord. Chiappetta has not established that defense counsel's ability to represent him suffered; accordingly, we cannot say the trial court abused its discretion in denying counsel's mid-trial motion to withdraw.

Request for Mitigation Hearing
¶ 14 Chiappetta next argues the trial court improperly denied his request for a mitigation hearing, which he had made orally after requesting a continuance at the time of sentencing. The transcript of the hearing reveals, however, that the trial court expressly denied only the request for a continuance, stating it had been made "too late." It is unclear whether the court's denial encompassed the request for a mitigation hearing, particularly because it effectively held such a hearing, as discussed below.
¶ 15 Rule 26.7(a), Ariz. R.Crim. P., 17 A.R.S., provides that, "[w]hen the court has discretion as to the penalty to be imposed, it may on its own initiative, and shall on the request of any party, hold a pre-sentencing hearing at any time prior to sentencing." We find instructive our decision in State v. Asbury, 145 Ariz. 381, 701 P.2d 1189 (App.1984). There we determined that the trial court had erred in denying the defendant's motion for a mitigation hearing on the ground it had not been made before the date of sentencing. We held that "[the] right to a *372 presentence mitigation hearing is an absolute right, and the only limitation as to timeliness is that it must be requested prior to sentencing." Asbury, 145 Ariz. at 385, 701 P.2d at 1193. However, we noted in Asbury that, even though the court had denied the request, it essentially held such a hearing in any event. Therefore, this court found no reversible error on that ground. Similarly, the sentencing here was tantamount to a mitigation hearing.
¶ 16 The trial court reviewed the presentence report and questioned a representative from the probation department about Chiappetta's alleged military service and traumatic events that reportedly occurred during his childhood. Defense counsel claimed that Chiappetta suffers from post-traumatic stress disorder and pointed out that the offenses involved economic loss, rather than physical harm or violence. Additionally, the court inquired about assistance Chiappetta had allegedly provided law enforcement in another matter, questioning both the prosecutor and a detective and permitting a mid-hearing recess so that Chiappetta could fully present this claim. The court also gave Chiappetta the opportunity to speak on his own behalf and he did so at length. Chiappetta has not pointed to any evidence that he was prevented from introducing. Consequently, even if any error occurred in denying Chiappetta's motion, it was harmless. Asbury.

Blakely Error
¶ 17 In a supplemental brief, Chiappetta contends his aggravated prison terms were imposed in violation of Blakely. He argues he was entitled to a jury determination, beyond a reasonable doubt, of the aggravating factors that were used to increase the terms beyond the presumptive.[3] This issue presents a question of law challenging the legality of a sentence, which we review de novo. See State v. Sepahi, 206 Ariz. 321, 78 P.3d 732 (2003).
¶ 18 At the outset, the state argues that Chiappetta has waived any challenge to his sentence under Blakely because the foundation for his claim existed well before Blakely was decided but he failed to raise any right-to-jury-trial issues at sentencing or in his opening brief. In Sepahi, our supreme court noted that the defendant had waived an Apprendi argument made for the first time in supplemental briefing on appeal. Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). See State v. Martinez, 209 Ariz. 280, 100 P.3d 30 (App.2004) (defendant's failure to challenge, as violative of right to trial by jury, trial court's imposition of aggravated prison term waived absent fundamental error). As the supreme court stated in addressing an analogous issue:
The lack of a Batson decision on the books did not prevent [defendants] from timely raising the issue in their trials.
....
We do not deny that Batson is a significant change in the law. It is not, however, so novel an idea as to excuse the defendant's failure to make a timely objection.
State v. Holder, 155 Ariz. 83, 86, 745 P.2d 141, 144 (1987).
¶ 19 Numerous other courts have ruled similarly. See Rodriguez v. United States, 286 F.3d 972 (7th Cir.2002) (petitioner sentenced prior to Apprendi decision nevertheless waived Apprendi claim by failing to raise equivalent argument in district court); United States v. Palmer, 297 F.3d 760, 767 (8th Cir.2002) ("[T]hat Apprendi as a legal precedent did not exist before the prior appeal in the present case ... did not excuse [the defendant] from the burden of raising an Apprendi-like argument in the first appeal."); United States v. Padilla-Reyes, 247 F.3d 1158 (11th Cir.2001) (defendant raising Apprendi argument for first time in supplemental briefing on appeal waived argument for failure to raise it in initial briefing on appeal). And a number of courts have applied similar reasoning to Blakely arguments. See, e.g., United States v. Sanchez-Cruz, 392 F.3d 1196 (10th Cir.2004); United States v. *373 Stearns, 387 F.3d 104 (1st Cir.2004); Mitchell v. State, 821 N.E.2d 390, 399 (Ind.Ct.App.2004) ("That the Apprendi rule was extended in Blakely is of no moment, inasmuch as [appellant] should have objected on Apprendi grounds and preserved this issue, just as the defendant in Blakely did."). Despite these precedents, in our discretion, given the importance of the Blakely issue raised and the need to develop the law and provide guidance to trial courts in this rapidly evolving area, we address Chiappetta's argument on its merits. See State v. Smith, 203 Ariz. 75, 50 P.3d 825 (2002) (reviewing court may choose to address argument otherwise waived).
¶ 20 In Apprendi, the United States Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. at 2362-63, 147 L.Ed.2d at 455. In Blakely, the Supreme Court extended that holding and determined that, for Apprendi purposes, the "statutory maximum" sentence is "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." ___ U.S. at ___, 124 S.Ct. at 2537. Chiappetta contends his substantially aggravated sentences violated that dictate because the "statutory maximum" here was the presumptive sentence and, therefore, this court must vacate his sentences and remand his case for resentencing. We disagree.
¶ 21 In Apprendi and again in Blakely, the Supreme Court expressly excepted "prior conviction[s]" from the general principle that facts that increase the penalty for a crime must be presented to a jury and proved beyond a reasonable doubt. Blakely, ___ U.S. at ___, 124 S.Ct. at 2536; Apprendi, 530 U.S. at 490, 120 S.Ct. at 2362, 147 L.Ed.2d at 455. This exception has been applied by various courts across the country. See, e.g., United States v. Quintana-Quintana, 383 F.3d 1052, 1053 (9th Cir.2004) ("Blakely does nothing to upset [the] well-settled rule" excepting prior convictions); United States v. Cooper, 375 F.3d 1041, 1053 n. 3 (10th Cir.2004) (Blakely and Apprendi inapplicable because penalty increase based on "facts of prior conviction," for which "specific exception" has been made); United States v. Marseille, 377 F.3d 1249, 1256 n. 14 (11th Cir.2004) (though district court had enhanced defendant's sentence with prior convictions, "Blakely does not take such fact-finding out of the hands of the courts"); United States v. Pacheco-Zepeda, 234 F.3d 411, 415 (9th Cir.2000) ("Apprendi held that all prior convictions-not just those admitted on the record-were exempt from Apprendi's general rule and ... may continue to be treated as sentencing factors."); Carson v. State, 813 N.E.2d 1187, 1189 (Ind.Ct.App.2004) (aggravating factor of multiple prior convictions exempt from Blakely because "already ... proven beyond a reasonable doubt"); State v. Abdullah, 372 N.J.Super. 252, 858 A.2d 19 (Ct.App.Div.2004) (same).
¶ 22 Under A.R.S. § 13-604(D), which governs sentencing for repetitive offenders, the presumptive term of imprisonment for a defendant convicted of a class two felony with two or more historical prior felony convictions is 15.75 years, and the maximum allowable sentence is twenty-eight years. But § 13-702.01(E) provides that that term may be as much as thirty-five years if the court finds "at least two substantial aggravating factors listed in [A.R.S.] § 13-702, subsection C." Here, the trial court found that Chiappetta's twelve prior felony convictions and his eleven related imprisonments were separate aggravators under § 13-702(C) justifying a substantially aggravated sentence.[4] These undisputed aggravators were intrinsic to the prior convictions proved by the state and elevated the maximum sentence the trial court could impose, without making any additional findings, to thirty-five years, which is what Chiappetta received. That the court also found other aggravating factors and aggravated his sentence to the full extent possible does not change the analysis. Chiappetta's numerous prior convictions and *374 incarcerations, standing alone, were sufficient aggravating circumstances to authorize the trial court's imposition of the substantially aggravated prison term.
¶ 23 The other aggravating factors that the trial court considered, such as the harm to the victim and failure of previous rehabilitative efforts, need not be addressed because they were not necessary to establish the maximum prison term that is statutorily authorized, as contemplated by Blakely. As Division One of this court recently observed, when an aggravated sentencing range is established in a Blakely-compliant manner, the trial court may properly proceed to consider and weigh other factors in aggravation in imposing an appropriate sentence within the aggravated range. Martinez (where aggravated factor of victim's death was implicit in jury finding, trial court's weighing of additional aggravating factors not violative of Blakely because jury finding expanded sentencing range); see State ex rel. Smith v. Conn, 209 Ariz. 195, ¶ 12, 98 P.3d 881, 884 (App.2004) ("Once authorized to sentence within the statutory range for aggravated sentences, the facts `legally essential to the punishment' have been found."), quoting Blakely, ___ U.S. at ___, 124 S.Ct. at 2543; see also United States v. Booker, ___ U.S. ___, 125 S.Ct. 738, ___ L.Ed.2d ___ (2005) (judicial sentence enhancements acceptable if resulting sentence is within authorized range). Once the thirty-five-year maximum sentence was established through Chiappetta's prior felony convictions, the mandate of Blakely was satisfied.
¶ 24 As our supreme court expressly noted in State v. Ring, Sixth Amendment concerns are wholly satisfied in the sentencing context where prior convictions are concerned. 204 Ariz. 534, ¶¶ 60, 62, 65 P.3d 915, 938 (2003) (Ring III) ("the Court in Apprendi chose not to overrule Almendarez-Torres [v. U.S., 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998)], and unmistakably carved out an exception for `prior convictions' that specifically preserved the holding of Almendarez-Torres"); see also Jones v. United States, 526 U.S. 227, 249, 119 S.Ct. 1215, 1227, 143 L.Ed.2d 311, 329-30 (1999) ("[A] prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees."). Thus, that a defendant is exposed to a greater potential sentence by having one or more historical prior felony convictions does not violate the principles announced in Apprendi because the Sixth Amendment right to jury trial is not implicated by a defendant's criminal history. Moreover, the defendant is not deprived of notice of the potential that he or she could receive an aggravated sentence, as determined by the legislature. "In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail." Blakely, ___ U.S. at ___, 124 S.Ct. at 2540.
¶ 25 Accordingly, permitting the trial court to freely consider any appropriate sentencing factors once the permissible statutory range is constitutionally established conforms to the due process concerns underlying both Apprendi and Blakely, and, additionally reflects the express intent in those cases that judges' traditional sentencing discretion not be eviscerated. As the Court stated in Apprendi: "We should be clear that nothing in [our jurisprudence] suggests that it is impermissible for judges to exercise discretion-taking into consideration various factors relating both to offense and offender-in imposing a judgment within the range prescribed by statute." 530 U.S. at 482, 120 S.Ct. at 2358, 147 L.Ed.2d at 449. The Court recently reaffirmed this principle in Booker stating, "[f]or when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." ___ U.S. at ___, 125 S.Ct. at 750. Cf. State v. Miranda-Cabrera, 209 Ariz. 220, 99 P.3d 35 (App.2004) (once Blakely-compliant ceiling has been set, trial judge is free to engage in traditional discretionary sentencing); State v. Fell, 209 Ariz. 77, ¶ 43, 97 P.3d 902, 914 (App.2004) (when Blakely is not implicated, trial court may impose any term within range authorized by verdict because "[j]udicial factfinding in the course of selecting a sentence within the authorized range does not implicate the indictment, jury-trial, and reasonable-doubt components of the Fifth and Sixth Amendments"), quoting Harris v. United States, *375 536 U.S. 545, 558, 122 S.Ct. 2406, 2415, 153 L.Ed.2d 524, 538 (2002).
¶ 26 To hold, as Chiappetta urges, that the trial court could not find or consider applicable aggravators, notwithstanding that Chiappetta's maximum penalty was properly established through his prior convictions, would render the above pronouncements ineffectual if not meaningless.[5] The Court reiterated in Blakely,"[n]othing we have said impugns [the] salutary objectives" of determinate sentencing schemes predicated on judicial fact-finding. ___ U.S. ___, 124 S.Ct. at 2540. Stated differently, Blakely does not require any further jury determination when the maximum possible sentence is established in another way that comports with the constitutional protections underlying Apprendi and Blakely.[6]See Martinez (when one aggravating factor properly establishes an extended sentencing range in compliance with Blakely, other factors in aggravation or mitigation may then be considered); Conn (same); see also Stearns, 387 F.3d 104, 107 (1st Cir.2004) ("Blakely... does not encompass sentencing enhancements based upon `the fact of prior conviction.'"); People v. Harless, 125 Cal.App.4th 70, 22 Cal.Rptr.3d 625, 646 (2004) (because "[o]ne valid factor in aggravation is sufficient to support the imposition of an upper term," imposing that upper term without additional jury findings on non-Blakely-compliant factors not violative of defendant's jury trial right under Blakely); Wickliff v. State, 816 N.E.2d 1165, 1167 (Ind.Ct.App.2004) (aggravating factor of extensive criminal history based on multiple prior convictions "exempt" from Blakely because "even a single valid aggravating circumstance is sufficient to justify enhancement of a sentence"); cf. United States v. Hankins, 329 F.Supp.2d 1225, 1236 (Mont.2004) (court, as opposed to jury, finding of aggravating factors constitutionally permissible under Blakely if factor is "a detail of [the] underlying offense").
¶ 27 In sum, both the letter and spirit of Blakely require nothing more when the sentence is within the range authorized by the jury's verdict and a defendant's prior convictions. Accordingly, Chiappetta's sentences were lawfully imposed.

Disposition
¶ 28 Chiappetta's convictions and sentences are affirmed.
PELANDER, Chief Judge, specially concurring.
¶ 29 I concur with the disposition and with all aspects of the opinion except those portions of ¶¶ 23-27 that essentially conclude one Blakely-compliant or -exempt aggravating factor alone, regardless of the sentencing court's finding and weighing of mitigating factors, is sufficient to justify any aggravated sentence within the range authorized by that factor. Panels of both divisions of this court have disagreed with that proposition.[7]See *376 State v. Munninger, 209 Ariz. 473, 104 P.3d 204 (App.2005); Timmons, 209 Ariz. 403, 103 P.3d 315 (App.2005); but see Martinez. My agreement with the conclusions reached in Timmons and Munninger leads me to reject the "one is enough" approach espoused above.
¶ 30 This court, however, recently ruled that when a trial court finds at least one Blakely-compliant or -exempt aggravating factor and finds no mitigating factors, the court may consider additional aggravating factors for which reasonable evidence exists and impose a sentence anywhere within the aggravated range based on the totality of aggravating factors. See State v. Alire, 209 Ariz. 517, ¶ 13, 105 P.3d 163, 166 (App.2005); see also State v. Viramontes, 204 Ariz. 360, ¶ 14, 64 P.3d 188, 190 (2003) ("In non-capital cases, aggravators need only be supported by reasonable evidence."). A sentencing court's consideration of additional, non-Blakely-compliant, aggravating circumstances is then permissible because the defendant has become constitutionally eligible for the aggravated sentence. See Alire, 209 Ariz. 517, ¶ 13, 105 P.3d at 166. In my view, that analysis applies here and supports affirmation of Chiappetta's sentences.
¶ 31 The record in this case shows that the trial court found there were no mitigating circumstances and, in fact, little, if any, mitigating evidence was presented, although the court provided Chiappetta opportunities to do so. The trial court attempted to elicit such evidence at the sentencing hearing  for example, alleged assistance by Chiappetta to law enforcement officials; Chiappetta's claimed military service, which he was unable to confirm and a probation officer was unable to verify; and an allegation of possible sexual impropriety by Chiappetta's mother during his childhood, which Chiappetta declined to discuss. At one point, the court stated that Chiappetta had "provided no background [and] no documentation of any of" the alleged mitigating circumstances.
¶ 32 Before pronouncing sentence the court stated that the "aggravating factors outweigh[ed] the totality of the mitigating factors referred to" in the presentence report and by Chiappetta and his counsel during the sentencing hearing. But the court never made specific findings as to any potential mitigators. Under § 13-702(B), any alleged mitigating circumstances must be "found to be true" by the trial court, and the court must ensure that "factual findings and reasons in support of such findings are set forth on the record at the time of sentencing." See also State ex rel. Smith v. Conn, 209 Ariz. 195, ¶ 6, 98 P.3d 881, 883 (App.2004). No such mitigating circumstances were expressly found or articulated here.
¶ 33 In addition to the absence of any such findings by the court, I note that in his supplemental brief, Chiappetta himself made no mention of mitigating factors. In short, a reading of the sentencing transcript as a whole leads me to conclude that, although the court alluded to potential mitigating circumstances, it ultimately did not find any. Thus, viewed in context, the court's statement that the aggravating factors "outweigh[ed]" any mitigating factors has no particular legal effect that I can discern, and in my view represents mere gratuitous, or surplus, language. Accordingly, because the trial court in fact found no mitigating factors, and because Chiappetta's twelve prior convictions and his eleven related imprisonments were Blakely-exempt and clearly supported the court's finding of two substantial aggravating factors for purposes of § 13-702.01(E), I find no error in its consideration of any additional aggravators that might not have complied with Blakely. See Alire.
FLÓREZ, Presiding Judge, specially concurring.
¶ 34 I join Judge Pelander's special concurrence and, for the reasons stated therein, concur in the affirmance of Chiappetta's convictions and sentences.
NOTES
[1] At the end of the second day of trial, the judge obtained Chiappetta's cellular telephone number from defense counsel and left a voice message for Chiappetta, informing him that a warrant had been issued for his arrest and that, by absenting himself from trial, Chiappetta was relinquishing his confrontation right, his right to testify on his own behalf, and other constitutional rights.
[2] The state argues that, by failing to adequately argue the issue on appeal, Chiappetta has waived his challenge to the trial court's denial of his motion to withdraw. We find his argument, albeit conclusory, sufficient to merit our resolution.
[3] As noted earlier, the trial court found the aggravating circumstances were as follows: Chiappetta's twelve prior felony convictions; his eleven previous imprisonments and probationary terms; the failure of previous rehabilitative efforts; the financial harm caused to multiple victims over a lengthy time period; and the emotional harm to K.
[4] Section 13-702(C)(11) and (21), A.R.S., lists as aggravating factors, respectively: "The defendant was previously convicted of a felony within the ten years immediately preceding the date of the offense" and "[a]ny other factor that the court deems appropriate to the ends of justice."
[5] Chiappetta has not argued or suggested that the trial court relied on improper factors or improperly weighed the aggravating factors in the exercise of its sentencing discretion. See State v. Ojeda, 159 Ariz. 560, 769 P.2d 1006 (1989).
[6] Another panel of this court has come to an opposite conclusion in State v. Timmons, 209 Ariz. 403, 103 P.3d 315 (App.2005), primarily relying on State v. Ring, 204 Ariz. 534, 65 P.3d 915 (2003) (Ring III). But in Ring III, in rejecting the state's proposal that a trial judge may find and weigh additional aggravating factors beyond an initial aggravator found by a jury, the court expressed its concern with vitiating the essential historical "process involved in determining whether mitigating factors prohibit imposing the death penalty[, a process that] plays an important part in Arizona's capital sentencing scheme." 204 Ariz. 534, ¶ 89, 65 P.3d at 943. That concern does not exist outside the narrow capital sentencing context, and there is nothing in Ring III to suggest that the court was making any pronouncement, or communicating any message, about Arizona's noncapital sentencing statutes. Consequently, to construct a broad across-the-board application of Blakely to all sentencing aggravators from the limited and specialized framework of Ring III appears unwarranted.
[7] Although I do not disagree with ¶¶ 18-19, supra, I also note that our declining to find the Blakely issue waived is consistent with the approach taken by both divisions of this court. See, e.g., State v. Munninger, 209 Ariz. 473, ¶¶ 7-12, 104 P.3d 204, 208-09 (App.2005) (no waiver of Blakely issue despite not having been raised below); State v. Henderson, 209 Ariz. 300, ¶ 9, 100 P.3d 911, 914 (App.2004) (addressing alleged Blakely error even though "[n]either party requested that a jury determine the aggravators beyond a reasonable doubt"); State v. Alire, (any Blakely error that results in illegal sentence constitutes fundamental error not waived by failure to raise in trial court or in opening brief); State v. Resendis-Felix, 209 Ariz. 292, ¶ 6, 100 P.3d 457, 459 (App.2004) (same).