NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

JOSEPH CHARLES BUTITTA, *Appellant*.

No. 1 CA-CR 17-0204
FILED 3-20-2018

Appeal from the Superior Court in Yavapai County
No. P1300CR201501012
The Honorable Michael R. Bluff, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By W. Scott Simon
*Counsel for Appellee*

C. Kenneth Ray II, P.L.L.C., Prescott
By C. Kenneth Ray II
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Patricia A. Orozco[1] delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Maria Elena Cruz joined.

---

**O R O Z C O**, Judge:

**¶1** Joseph Charles Butitta appeals his convictions and sentences for drive-by shooting, three counts of aggravated assault, criminal damage, endangerment, disorderly conduct, child abuse, conspiracy to commit tampering with a witness, and tampering with physical evidence. He argues the trial judge should have recused himself from this case, and the court erred in denying a motion for mistrial and admitting evidence. Butitta also contends the prosecutor engaged in misconduct, which resulted in an unfair trial. For the following reasons, we affirm.

## FACTS[2] AND PROCEDURAL HISTORY

**¶2** Butitta was driving his Toyota 4-Runner at night with his girlfriend, Tara Hatcher, and his young son, X.C., from a previous relationship with M.C., when he began following a pickup truck that had passed him. Butitta repeatedly flashed his hi-beams at the truck and otherwise drove aggressively. When the pickup turned a corner, Butitta fired a handgun, striking the truck several times. None of the truck's occupants, a 24-year-old driver and two 14-year-old boys, were physically injured. One of the bullets struck a nearby house, nearly penetrating the bedroom wall of a sleeping 16-year-old girl.

**¶3** The police investigation eventually focused on a black 4-Runner parked behind Butitta's home. Butitta's neighbor informed police that he recognized the 4-Runner as belonging to Butitta. Neighbors also

---

[1] The Honorable Patricia A. Orozco, retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2] We view the facts in the light most favorable to upholding the verdicts and resolve all reasonable inferences against Butitta. *See State v. Harm*, 236 Ariz. 402, 404 n.2, ¶ 2 (App. 2015).

reported glass technicians had visited Butitta's home and replaced the 4-Runner's windshield a day or two after the shooting. Neighbors explained that Butitta typically parked the vehicle in the front driveway.

¶4 Police executed a search warrant at Butitta's residence and discovered the 4-Runner's title indicating Butitta owned the vehicle. Officers also located a receipt for a handgun and ammunition that matched the caliber of spent shells found at the crime scene, and they obtained text messages between Butitta and M.C. and Butitta and Hatcher implicating him in the shooting. One of the messages from Butitta to Hatcher the day after the shooting exclaimed he "made [X.C.] promise me . . . that we can't talk about that ever again." Finally, officers located Butitta's discarded windshield, forensic testing of which revealed "particles characteristic of gunshot residue" on the interior driver's side surrounding a 3 to 4-inch hole.

¶5 Butitta and Hatcher were tried together, and the jury found Butitta guilty of ten criminal offenses related to the shooting. The court imposed a combination of consecutive and concurrent minimum prison terms totaling 8.5 years followed by three years of supervised probation. Butitta timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## DISCUSSION

### I. Judicial Bias

¶6 At the beginning of the trial's second day, defense counsel requested the judge disqualify himself pursuant to Arizona Rule of the Supreme Court 81, Canon 2.11, because counsel had just learned the judge had a prior business relationship with Butitta's aunt. The judge inquired into the aunt's occupation, and when counsel informed him she is a real estate agent, the judge remembered listing a commercial building with her from January 2011 until October 2012. The judge explained he had not been in contact with the aunt since the listing expired without the property being sold. The judge also noted, "We probably spoke less than a half a dozen times during that year-and-a-half." Defense counsel, alleging "the appearance of impropriety[,]" then read the following message from the aunt that he received that morning:

> I had his building listed in Clarkdale. [The trial judge] and
> his wife . . . got a divorce while I had the listing, so they split
> property and he kept the building. His brother works out of

it. They own a construction company. I have been in the back offices of the [courthouse] . . . countless with [sic] [another judge] . . . . [The trial judge] always gives me a hug.

**¶7** Finding no basis for disqualification, the court denied Butitta's request. On appeal, Butitta contends the court's ruling amounted to reversible error. We review for an abuse of discretion. *State v. Ramsey*, 211 Ariz. 529, 541, ¶ 37 (App. 2005).

**¶8** "A trial judge is presumed to be free of bias and prejudice." *State v. Hurley*, 197 Ariz. 400, 405, ¶ 24 (App. 2000). To overcome this presumption, a party requesting recusal must "set forth a specific basis for the claim of partiality and prove by a preponderance of the evidence that the judge is biased or prejudiced." *State v. Medina*, 193 Ariz. 504, 510, ¶ 11 (1999). "Bare allegations of bias and prejudice, unsupported by factual evidence, are insufficient to overcome the presumption of impartiality and do not require recusal." *State v. Carver*, 160 Ariz. 167, 173 (1989). Specifically, the moving party must establish "a hostile feeling or spirit of ill-will, or undue friendship or favoritism, towards one of the litigants." *In re Guardianship of Styer*, 24 Ariz. App. 148, 151 (1975).

**¶9** Butitta fails to produce sufficient evidence to rebut the presumption of impartiality. Butitta's contention that the trial judge "did not acknowledge . . . the assertion by [the aunt] of her more personal acquaintance with the Trial Judge during times she would visit [another judge]" and the fact the listed property did not sell during the aunt's listing of the property are not facts that establish "a hostile feeling or spirit of ill-will, or undue friendship or favoritism, towards one of the litigants." *Id.* Butitta's aunt was not one of the litigants in this case, and she was not a witness or involved in the case in any manner. Butitta's speculation of judicial bias is insufficient. The court did not abuse its discretion in denying Butitta's recusal request.

## II. Motion for Mistrial: The Prosecutor's Opening Statement

**¶10** During his opening statement, the prosecutor apparently read[3] the following text message exchange between Butitta and Hatcher that occurred the day after the shooting and was set forth in Exhibit 126:

---

[3] The opening statements are not in the record. However, the record does indicate Butitta's verbal motion for mistrial after opening statements concluded. Butitta argued the basis for his motion as follows: "[I]t's . . .

[Butitta]: I am so sorry Tara.

[Butitta]: I'm . . . freaking out babe.

[Butitta]: I'm so . . . stupid . . . God please don't let this catch up to me. Please.

[Hatcher]: This goes to the grave with us.

[Butitta]: I really hope so. I can't believe I [put] you guys through that. I'm a horrible horrible father.

[Hatcher]: [It] had to been [sic] a stolen vehicle. We just need to at this point manipulate [X.C.].

[Butitta]: I'm just really really worried that someone got a look at my truck. I'm . . . terrified.

[Butitta]: I just told him that we can't talk about that ever again and made him promise me.

[Hatcher]: Yikes well all we can do is hope and pray he keeps his mouth shut.

[Hatcher]: [It] probably wouldn't hurt to park your truck in the back for a while.

[Hatcher]: Shit this isn't looking good on Prescott area uncensored.

[Butitta]: I can't breathe.

[Hatcher]: If someone was behind us then they would have had to [see] your logo but nothing is coming up about that, it will be forgotten about by tomorrow, people are gossiping at this point.

[Butitta]: I really hope so baby. I'm . . . shaking uncontrollably and my chest hurts so bad. I'm so so so sorry Tara.

---

improper for the State in its opening argument to tell the jurors what evidence is and indeed read the [text messages] to the jurors without [them] first having been received by the Court."

[Butitta]: If all else fails I'm going to lie my ass off and say [that] the truck had [to have] been stolen cause we were home sleeping when that happened.

[Hatcher]: I'm deleting all of them.

[Butitta]: Headlight fixed.

[Hatcher]: Delete all of our messages.

[Hatcher]: Aubrey said the windshield is ordered but won't be here till [W]ed.

[Hatcher]: Jared saw us with no headlight.

[Hatcher]: They . . . still think it's a jeep.

[Hatcher]: Just don't over feed into it. Tell her we've been practicing a lot (and we usually have some of the kids with us) due to all the bullshit that has been going on with break ins and car thefts and armed robberys [sic] and shootings, and that you sold it a few weeks ago cause you need money to move.

[Hatcher]: At least your windshield comes tomorrow :)

[Hatcher]: Delete all our messages.

[Butitta]: And deactivate your [Facebook account].

[Hatcher]: I think I did, gonna try to sleep I'm home.

¶11        Butitta moved for a mistrial, arguing the prosecutor improperly referred to Exhibit 126 before it was admitted. Without objection, the court reserved ruling on the motion until the State concluded its case-in-chief. The court reasoned that, by waiting until the State presented its case, the court could "see whether or not the evidence would have otherwise come in and then I can determine whether there's any prejudice." The court ultimately denied the mistrial motion.

¶12        For the reasons set forth *infra*, Exhibit 126 was admissible. Therefore, the prosecutor's forecast was not improper because "there was justification for believing [the] evidence . . . would be presented." *State v. Bowie*, 119 Ariz. 336, 339-40 (1978). Additionally, the court's instructions to the jurors—that they were to consider only the evidence presented to them

6

and that the statements of the attorneys were not evidence—cured any potential prejudice. *See id.* at 340 ("Any possible prejudice from the opening statement was overcome by the court's cautionary instructions that evidence did not come from the attorneys and that the verdict must be determined only by reference to the evidence . . . .").

**¶13**        Butitta also argues the "willful and intentional violation of Trial protocol must be ruled upon immediately," and the court's decision to delay its ruling—which Butitta characterizes as "Judicial overreaching"—violated his due process rights. Butitta cites no authority supporting his contention that the trial court was required to immediately rule on his mistrial motion. *See* Ariz. R. Crim. P. 31.10(a)(7)(A) ("An appellant's opening brief must set forth . . . appellant's contentions with supporting reasons for each contention, and with citations of legal authorities . . . on which the appellant relies."). And the cases he does cite are inapposite. *See State v. Marquez*, 113 Ariz. 540, 542 (1976) (explaining double jeopardy bars re-prosecution of a defendant who successfully seeks a mistrial due to prosecutorial or judicial overreaching); *State v. Aguilar*, 217 Ariz. 235, 238, ¶ 10 (App. 2007) (same). Accordingly, Butitta fails to establish an abuse of discretion. *See Pool v. Superior Court In & For Pima County*, 139 Ariz. 98, 102 (1984) (giving trial court discretion to declare mistrial).

## III.    Admissibility of Exhibit 126[4]

**¶14**        As he did at trial, Butitta argues, without relying on controlling authority, Exhibit 126 was inadmissible because it lacked sufficient authentication and foundation as to the authors and recipients of the text messages. We review for an abuse of discretion. *State v. George*, 206 Ariz. 436, 446, ¶ 28 (App. 2003).

**¶15**        Evidence is authenticated when there is "evidence sufficient to support a finding that the item is what the proponent claims it is." Ariz. R. Evid. 901(a). "In ruling on authentication, the superior court 'does not determine whether the evidence is authentic, but only whether evidence

---

[4]        Butitta also challenges the admission of Exhibits 149 and 150. Those exhibits are more complete records relating to Butitta's and Hatcher's cell phones, from which a detective "carved out the relevant text messages" to create Exhibit 126. Butitta does not argue Exhibits 149 and 150 were improperly admitted for reasons different from the basis for his challenging Exhibit 126's admissibility. Thus, because we reject Butitta's challenge to Exhibit 126, we also conclude Exhibits 149 and 150 were admissible.

exists from which the jury could reasonably conclude that it is authentic.'" *State v. Damper*, 223 Ariz. 572, 576, ¶ 18 (App. 2010) (quoting *State v. Lavers*, 168 Ariz. 376, 386 (1991)). Arizona courts have adopted "a flexible approach," which allows the "trial court to consider the unique facts and circumstances in each case—and the purpose for which the evidence is being offered—in deciding whether the evidence has been properly authenticated." *State v. Haight–Gyuro*, 218 Ariz. 356, 360, ¶ 14 (App. 2008).

¶16         Here, sufficient evidence exists from which the jury reasonably could have concluded Exhibit 126 reflected an exchange of text messages between Butitta and Hatcher. Testimony and phone records admitted in evidence established that the text messages were sent to and from phone numbers that were assigned to Butitta and Hatcher. Butitta's ex-wife testified that she frequently communicated with Butitta by text, and he never allowed anyone to use his phone for any reason. Trial testimony also established that Hatcher's phone was password protected, indicating she alone had access to the device. Furthermore, the messages were sent the day after the shooting, and they referred to information that directly and circumstantially identified Butitta and Hatcher. For example, Butitta referred to Hatcher by name, Butitta expressed fear about his truck being identified, Butitta and Hatcher both mentioned X.C. and referred to manipulating him not to say anything incriminating, Butitta informed Hatcher he had fixed the 4-Runner's headlight—which the victims had described as malfunctioning—and Hatcher mentioned Butitta's new windshield arriving the following day. On this record, the trial court did not abuse its discretion in concluding the jury could determine Exhibit 126 contained text messages between Butitta and Hatcher.

## IV.    Prosecutorial Misconduct

¶17         Butitta argues he was entitled to a mistrial because the prosecutor engaged in misconduct during rebuttal closing argument by making disparaging comments about defense counsel's credibility. Specifically, Butitta complains about the following highlighted statements:

> For [defense] counsel to suggest to you that it would be impossible for casings to wind up outside of a vehicle if they had been shot from within the vehicle is baloney. *That's speculation.*

> One comment counsel indicated in the beginning of his [re]marks, [defense counsel], no mention in the 911 call,

urging you over and over to look at this 911 call about a headlight out. *That's false.*

[K.B.] mentioned a headlight out in the 911 call. When Jeff gets on the phone, he mentions a headlight out. That's in the 911 call. *That's just calling into question the credibility of counsel in all of his remarks when he blatantly told you something that is not accurate.*

What about the 911 call? What we do know from the testimony of [O]fficer Cozens is dispatch records all the calls that are coming in and there may be calls regarding other incidents or other reports coming in at the same time.

So do we know? Some of these calls, some of these later reports, do they deal with the shooting that occurred on Robert and Loos on July 26th? We don't know that. That's speculation. *But like a side show con man, counsel wants to say look over here, look over here.*

¶18        "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *State v. Hughes*, 193 Ariz. 72, 79, ¶ 26 (1998) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Reversal based on "prosecutorial misconduct requires that the conduct be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" *Id.* (quoting *State v. Atwood,* 171 Ariz. 576, 611 (1992)).

¶19        When considering a motion for a mistrial based on prosecutorial misconduct, a trial court should first consider "whether the prosecutor's statements called jurors' attention to matters the jury was not justified in considering in determining its verdict," and then the impact those statements had on the jury. *State v. Lee*, 189 Ariz. 608, 616 (1997). "Jury argument that impugns the integrity or honesty of opposing counsel is . . . improper." *Hughes,* 193 Ariz. at 86, ¶ 59. However, "[c]riticism of defense theories and tactics is a proper subject of closing argument." *United States v. Sayetsitty*, 107 F.3d 1405, 1409 (9th Cir. 1997). Specifically, the Arizona Supreme Court has held that a prosecutor's statements that defense counsel "'blind sided' witnesses," created a "smoke screen," and "relied on 'innuendo and inference' to support her theory" or "outrageous argument" was "not improper." *State v. Amaya-Ruiz*, 166 Ariz. 152, 171 (1990).

**¶20** Applying the foregoing principles to the challenged statements in this case, we conclude that the first three examples are not improper. Rather, those statements properly referred to the trial evidence and challenged defense counsel's arguments. *See State v. Bible*, 175 Ariz. 549, 602 (1993) ("[D]uring closing arguments counsel may summarize the evidence, make submittals to the jury, urge the jury to draw reasonable inferences from the evidence, and suggest ultimate conclusions."). The statement referring to defense counsel as a "a side show con man," however, was improper, and an unprofessional and disrespectful attack on defense counsel. *See Hughes*, 193 Ariz. at 86, ¶ 59. Nonetheless, the comment occurred once at the conclusion of a lengthy trial and, therefore, was not "so pronounced and persistent that it permeate[d] the entire atmosphere of the trial." *Id.* at 79, ¶ 26. The trial court did not abuse its discretion by denying Butitta's request for a mistrial based on prosecutorial misconduct. *See State v. Jones*, 197 Ariz. 290, 305, ¶ 37 (2000) ("[E]xcessive and emotional language is the bread and butter weapon of counsel's forensic arsenal, limited by the principle that attorneys are not permitted to introduce or comment upon evidence which has not previously been offered and placed before the jury.") (quoting *State v. Gonzales*, 105 Ariz. 434, 437 (1970)).

## CONCLUSION

**¶21** Butitta's convictions and sentences are affirmed.

